PEITZMAN, WEG & KEMPINSKY LLP
David B. Shemano
Monsi Morales
Kathryn F. Russo
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone:  (310) 552-3100
Fax:  (310) 552-3101

Proposed Counsel for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CLUB VENTURES INVESTMENTS LLC, et al., ) | Case No. 11-10891 (ALG) |
| ) | |
| Debtors. ) | |
| ) | Jointly Administered |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN JUNIOR SECURED
SUPERPRIORITY POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
363, 364 AND 507 AND (B) UTILIZE CASH COLLATERAL OF PREPETITION SECURED
LENDERS, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED
LENDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Club Ventures Investments LLC ("CV") and its

subsidiaries Club Ventures II, LLC (11-10892), CV 2, LLC (11-10894), CV II Gym, LLC (11-

10893), Club Ventures III, L.L.C.( 11-10896), CV 3, LLC (11-10895), CV III Gym, LLC (11-

10897), Club Ventures IV, LLC (11-10900), CV 4 Leasing, LLC (11-10898), CV IV Gym, LLC

(11-10899), Club Ventures VI, LLC (11-10901), CV VI, LLC (11-10902), CV VII Gym, LLC

(11-10903), Club Ventures VIII, LLC (11-10905), CV VIII Gym, LLC (11-10904), Club

Ventures X, LLC (11-10906), CV X Gym, LLC (11-10907), DB 85 Gym Corp. (11-10908), as

debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11

cases (collectively, "Cases") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2),

364(c)(3), and 364(d)(1) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(as amended, the "Bankruptcy Code"), rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and S.D.N.Y. LBR 4001-2, seeking entry of an

interim order (this "<u>Interim Order</u>") *inter alia*:

(i)      authorizing the Debtors to obtain an aggregate amount not to exceed $800,000 of

secured, superpriority post-petition financing, junior in priority to certain prepetition secured

claims and adequate protection claims and liens granted to certain  Prepetition Lenders (as

defined below), and with administrative priority (the "<u>DIP Facility</u>") pursuant to the terms and

conditions of that certain Junior Secured Super Priority Debtor-in-Possession Promissory Note,

Security Agreement and Guaranty (as it may be amended, supplemented, restated, or otherwise

modified from time to time, the "<u>DIP Credit Agreement</u>") by and among the Debtors and LNB

Holding LLC ("<u>Holding</u>" or the "<u>DIP Lender</u>"), substantially in the form of <u>Exhibit A</u> attached to

the Motion;

(ii)      authorizing the Debtors to execute and deliver the DIP Credit Agreement and all

other related loan documents (collectively, the "<u>DIP Documents</u>") by and among the Debtors and

the DIP Lender and to perform such other acts as may be necessary or desirable in connection

with the DIP Documents;

(iii)      authorizing the Debtors (other than CV) to jointly and severally guaranty (the

"<u>DIP Guarantors</u>")  the DIP Credit Agreement the obligations under the DIP Facility (the "<u>DIP</u>

<u>Guarantees</u>") and to perform such other acts as may be necessary or desirable in connection with

the DIP Documents;

(iv)      granting to the DIP Lender allowed superpriority administrative expense claims in

the Cases for the DIP Facility and all obligations owing thereunder and under the DIP

Documents, including all indemnification obligations of the Debtors thereunder (collectively,

and including all "Obligations" as described in the DIP Credit Agreement and in paragraph 5 of

this Interim Order, the "DIP Obligations"), subject to the priorities set forth in paragraph 7 of this

Interim Order;

(v)      granting to the DIP Lender, automatically perfected, valid and enforceable junior

security interests in and liens on all of the DIP Collateral (as defined below), including, without

limitation, all property constituting "cash collateral" (as defined in section 363(a) of the

Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in

paragraph 7 of this Interim Order;

(vi)      authorizing the Debtors to pay the principal, interest, fees, expenses and other

amounts payable under each of the DIP Documents as they become due, including, without

limitation, the fees and disbursements of the DIP Lender's counsel and other professionals, all to

the extent provided by and in accordance with the terms of the DIP Documents;

(vii)      authorizing the Debtors' use of Cash Collateral of the Prepetition Lenders;

(viii)      providing adequate protection to the Prepetition Lenders for any diminution in

value of their interests in the Prepetition Collateral (as defined below), including the Cash

Collateral;

(ix)      vacating and modifying the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

the DIP Documents and this Interim Order; and

(x)      scheduling a final hearing (the "Final Hearing") to consider the relief requested in

the Motion and approving the form of notice with respect to the Final Hearing.

The United States Bankruptcy Court for the Southern District of New York (the "Court")

having considered the Motion, Declaration of Steven Schwartz, Chief Financial Officer for the

Debtors, in Support of First Day Pleadings, the exhibits attached thereto, the DIP Documents,

and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on March 3, 2011 (the "Interim Hearing"); notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014, and S.D.N.Y. LBR 4001-2; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON DEBTORS' STIPULATIONS AND THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.       *Petition Date:*  On March 2, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Court commencing these Cases.

B.       *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.       *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby.  Consideration

of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases

and proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

        D.    *Creditors' Committee*.  No official committee of unsecured creditors has been

appointed in these Cases pursuant to section 1102 of the Bankruptcy Code.

        E.    *Stipulations and Findings Regarding Prepetition Liens and Obligations.*  Subject

to paragraph 27 below:

        (i)    *BofA Prepetition Liens and Obligations*.  Pursuant to that certain

Promissory Note (the "BofA Note"), dated June 29, 2004, as amended, between CV, as

borrower, and Bank of America, N.A. ("BofA"), as lender, as heretofore amended from

time to time, and that certain Loan Agreement (the "BofA Loan Agreement"), dated as of

August 4, 2009, between CV and BofA, as heretofore amended from time to time, BofA

agreed to make loans to CV (the "BofA Loans").  BofA also has outstanding a $1.5

million letter of credit for the account of Debtors (all amounts owing thereunder, together

with all amounts owing under the BofA Note and the BofA Loan Agreement, the "BofA

Obligations").  To induce BofA to extend the BofA Loans and as security for the

repayment of all amounts due under the BofA Obligations, (i) pursuant to that certain

Pledge Agreement (the "BofA Pledge Agreement", and together with the BofA Note, the

"BofA Agreement"), dated June 29, 2004, between BofA and CV, CV granted to BofA a

lien and security interest (the "BofA Liens") in substantially all of its assets, as more fully

described in the BofA Pledge Agreement (the "BofA Collateral"), and (ii) John D.

Howard ("JDH", and together with Holding, "LBN") issued a Continuing and

Unconditional Guaranty, dated June 29, 2004, and a Continuing and Unconditional

Guaranty, dated March 27, 2009 (together, the "JDH Guaranty"), guaranteeing all

amounts owed under the BofA Note.  As of the date of filing approximately $11,115,000 was owed to BofA in respect of the BofA Loans.

(ii)    *Praesidian Prepetition Liens and Obligations*.  Pursuant to agreements entered into between the Debtors and Praesidian Capital Investors, LP ("Investors"), Praesidian II SPV 1  LP ("SPV 1") and Praesidian II SPV 2, LP ("SPV 2", and together with Investors and SPV 1, "Praesidian," and together with BofA and LNB, the "Prepetition Lenders" and each a "Prepetition Lender"), from time to time (collectively, the "Praesidian Agreements"), Praesidian has loaned amounts to the Debtors from time to time (the "Praesidian Loans") and the obligations under such agreements (the "Praesidian Obligations") are secured by a lien and security interest (the "Praesidian Liens") in substantially all of the assets of Debtors (the "Praesidian Collateral").  As of the date of filing, approximately $30,626,715.70 was owed to Praesidian in respect of the Praesidian Loans.

(iii)    *LBN Prepetition Liens and Obligations*.   Pursuant to agreements entered into between the Debtors and LBN (as successor in interest to JDH) from time to time (collectively, the "LBN Agreements", and together with the BofA Agreement and the Praesidian Agreements, the "Prepetition Credit Agreements"), LBN has loaned amounts to or for the benefit of the Debtors from time to time (the "LBN Loans") and the obligations under such agreements (the "LBN Obligations", and together with the BofA Obligations and the Praesidian Obligations, the "Prepetition Obligations") are secured by a lien and security interest (the "LBN Liens", and together with the BofA Liens and the Praesidian Liens, the "Prepetition Liens") in substantially all of the assets of Debtors and by a pledge of the equity interests in all or substantially all of the Debtors ( the "LBN

Collateral", and together with the BofA Collateral and the Praesidian Collateral, the "Prepetition Collateral").[1]  As of the date of filing, not less than $22,400,000 was owed to LBN in respect of the LBN Loans.  In addition, pursuant to a Reimbursement Agreement between JDH and the Debtors dated June 27, 2004, if JDH is obliged to make any payment under the JDH Guaranty, the Debtors must reimburse LBN, and such reimbursement obligation is similarly secured.

(iv)    Except as provided for in this Interim Order, the Prepetition Liens (i) are valid, binding, perfected, enforceable liens on the Prepetition Collateral and, subject to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents and profits thereof, (ii) shall not be subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) shall be subject and subordinate only to (A) Carve Out (as defined below), (B) DIP Liens (as defined below), and (C) adequate protection liens.

(v)    Except as provided for in this Interim Order, the Prepetition Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms, and no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Obligations exists.  The Prepetition Obligations are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

---

[1] The LBN Obligations and the Praesidian Obligations are subordinated to the BofA Obligations pursuant to that certain Subordination Agreement, dated on or about March 5, 2009, by Praesidian Capital Investors, L.P. and LBN, in favor of BofA and that certain Subordination Agreement, dated on or about March 5, 2009, by Praesidian II SPV 1, LP and Praesidian II SPV 2, LP, in favor of BofA.

(vi)    The Prepetition Lenders perfected their security interests and

Prepetition Liens in and on the Prepetition Collateral by, among other methods, the filing

of UCC-1 financing statements, instruments filed in federal, state, and county offices,

mortgages, and other required documents against the applicable Debtors and such

collateral with the proper federal, state, and county offices for the perfection of such

security interests and Prepetition Liens, as applicable.

F.    *Prepetition Lenders' Consent*.    Each of the Prepetition Lenders consents to the

Debtors' use of the Prepetition Lenders' Cash Collateral and the priming of the Prepetition Liens

to the extent and solely on the terms and conditions provided for in this Interim Order, and in

accordance with the budget attached hereto as Exhibit A (the "Budget").  The adequate

protection provided herein and other benefits and privileges contained herein are consistent with

and authorized by the Bankruptcy Code and are necessary in order to obtain such consent.

G.    *Adequate Protection*.    The Prepetition Lenders are entitled to receive adequate

protection on account of their respective interests in the Prepetition Collateral pursuant to

sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any diminution in the

value of their interests in the Prepetition Collateral (including Cash Collateral) to the extent

provided for in this Interim Order, the Debtors' use, sale or lease of such Prepetition Collateral,

and the imposition of the automatic stay (collectively, and to the extent of any such diminution in

value, the "Diminution in Value").  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy

Code, as adequate protection, the Prepetition Lenders will receive (i) adequate protection liens

and superpriority claims, as more fully set forth in paragraphs 13 and 14 herein, (ii) interest

payments to BofA as set forth more fully in paragraph 15 herein, and (iii) payment of the

reasonable fees and disbursements (solely to the extent that such fees and disbursements are

incurred in connection with protecting the rights of the Prepetition Lenders under the Prepetition

Credit Documents, as applicable) of (A) Shearman & Sterling LLP, counsel to BofA, (B)

Morrison Cohen LLP, counsel to Praesidian, and (c) Moses & Singer LLP, counsel to LBN.  The

Debtors expressly reserve all rights to object to the reasonableness of the fees and disbursements

of the Prepetition Lenders.  To the extent such fees and disbursements are paid in excess of the

amounts determined reasonable by the Court, the application of such excess payments shall be

determined by the Court.

        H.        *Stipulations and Findings Regarding the Postpetition Financing*.

        (i)        *Need for Post-petition Financing and Use of Cash Collateral*.  The DIP

Facility is superior to the Debtors' other alternatives, if any, including the use of Cash Collateral

alone.  The Debtors' need to obtain credit up to the sum of $200,000 pursuant to the DIP Facility

and to use Cash Collateral is immediate and critical in order to enable the Debtors to continue

operations and to administer and preserve the value of their estates.  The ability of the Debtors to

maintain business relationships with their vendors, suppliers and customers, to pay their

employees, to make utility deposits and to otherwise finance their operations requires the

availability of working capital from the DIP Facility and the use of Cash Collateral, the absence

of either of which would immediately and irreparably harm the Debtors, their estates, their

creditors and equity holders, and the possibility for a successful reorganization.  The Debtors do

not have sufficient available sources of working capital and financing to operate their businesses

or maintain their properties in the ordinary course of business without the DIP Facility and use of

Cash Collateral.

        (ii)        *No Credit Available on More Favorable Terms*.  Given their financial

condition, financing arrangements, and capital structure, the Debtors are unable to obtain

financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.

The Debtors have been unable to obtain sufficient unsecured credit allowable under Bankruptcy

Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to

obtain credit:  (a) having priority over administrative expenses of the kind specified in sections

503(b), 507(a) and 507(b) of the Bankruptcy Code; or (b) secured by a lien on property of the

Debtors and their estates that is not otherwise subject to a lien.  Financing on a postpetition basis

is not otherwise available without granting the DIP Lender (i) perfected security interests in and

liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the

priorities set forth in paragraph 7 hereof, (ii) superpriority claims with the priorities set forth in

paragraph 8, and (iii) the other protections set forth in this Interim Order.

       (iii)    *Use of Proceeds of the DIP Facility.*  As a condition to the entry into the

DIP Credit Agreement, the extension of credit under the DIP Facility and the agreement for the

use of Cash Collateral, the DIP Lender and Prepetition Lenders require, and the Debtors have

agreed that, proceeds of the DIP Facility shall be used in a manner consistent with the terms and

conditions of the DIP Documents and in accordance with and to the extent set forth in the Budget

(as the same may be modified from time to time with the consent of the DIP Lender), consistent

with the terms of the DIP Documents and subject to such variances as permitted by the DIP

Credit Agreement, solely for (a) working capital and other general corporate purposes to fund the

Debtors' operations, (b) permitted payment of costs of administration of the Cases, and (c)

payment of such prepetition and postpetition expenses as have been or hereafter are consented to

by the DIP Lender, in writing in its sole discretion, and are approved by the Court.

I.        _Good Faith of the DIP Lender_.

(i)        *Willingness to Provide Financing*.  The DIP Lender is willing to provide financing to the Debtors subject to:  (a) the entry of this Interim Order and the Final Order (as defined below); (b) the DIP Lender's approval of the terms and conditions of the DIP Facility and the DIP Documents and satisfaction of all conditions precedent in the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Interim Order or any other order.

(ii)        *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length.  The credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

J.      *Sections 506(c) and 552(b)*.  In light of (i) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out and certain of the adequate protections liens and claims granted herein; and (ii) the agreement of the Prepetition Lenders to subordinate their adequate protection liens and superpriority claims to the Carve Out and the DIP Lender's liens and superpriority claims solely to the extent provided for herein, and to permit the use of their Cash Collateral for payments made in accordance with the Budget and this Interim Order, each of the DIP Lender and the Prepetition Lenders are entitled, upon entry of a Final Order (as defined below) granting such relief, to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.      *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance satisfactory to (i) the DIP Lender in its sole discretion with respect to the postpetition financing arrangements and (ii) the Prepetition Lenders in their sole discretion with respect to the use of Cash Collateral arrangements, approving such postpetition financing arrangements and use of Cash Collateral arrangements and consistent with the DIP Documents, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

L.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the Office of the United States Trustee for the Southern District of New York (the "UST"); (ii) all secured creditors, and (iii) the Debtors' consolidated list of 20 largest unsecured creditors, which constitutes due and sufficient notice

thereof pursuant to Rules 2002 and 4001(b) and (c) of the Bankruptcy Rules and S.D.N.Y. LBR

4001-2, and that no other or further notice is necessary for purposes of this Interim Order.

Based upon the foregoing stipulations, findings and conclusions, the Motion and the

record before the Court with respect to the Motion, and good and sufficient cause appearing

therefor,

### IT IS HEREBY ORDERED THAT:

1.    <u>Interim Financing and Use of Cash Collateral Approved</u>.  The Motion is granted

to the extent provided herein, the postpetition financing on an interim basis only is authorized

and approved, and the use of Cash Collateral on an interim basis only is authorized and

approved, subject to the terms and conditions set forth in this Interim Order.

## DIP Facility Authorization

2.    <u>Authorization of the DIP Financing and DIP Documents</u>.  The DIP Documents

are hereby approved on an interim basis for the purpose of the interim loans authorized herein.

The Debtors are expressly and immediately authorized and empowered to execute and deliver

the DIP Documents (including authorizing and causing the execution of appropriate documents

by the DIP Guarantors) and to incur and to perform the DIP Obligations in accordance with, and

subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments

and documents which may be required or necessary for the performance by the Debtors under

the DIP Facility and the creation and perfection of the DIP Liens described in and provided for

by this Interim Order and the DIP Documents; *provided, however,* notwithstanding anything to

the contrary in this Order, the Debtors shall have the right to repay any sums borrowed pursuant

to this Interim Order at anytime prior to the Final Hearing and, if the Debtors repay such

amounts prior to the Final Hearing, none of the deadlines contained in the DIP Documents shall

apply to the Debtors.  The Debtors are hereby authorized to pay the principal, interest, fees,

expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, the fees and disbursements of the DIP Lender (including the reasonable fees and expenses of the DIP Lender's attorneys and other professionals, indemnification obligations, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute DIP Obligations; provided, however, that such fees and expenses shall only be paid ten (10) business days after reasonably detailed invoices for such fees shall have been submitted to the Debtors, and the Debtors shall promptly provide copies of such invoices to the UST and counsel to the creditors' committee if one is appointed in these Cases, all to the extent provided in the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with the terms of the DIP Documents.

3.      Authorization to Borrow.  Subject to the terms and conditions set forth in the DIP Documents, the DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estate, the Debtors are hereby authorized to borrow up to an aggregate principal amount of $200,000, which may be repaid but not reborrowed. Such funds shall only be used for purposes permitted and prescribed under the DIP Documents (including, without limitation, as circumscribed by the Budget) and this Interim Order.

4.      DIP Obligations.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations

shall be enforceable against the Debtors, their estates and any successors thereto, including

without limitation, any trustee or other estate representative appointed or elected in the Cases, or

any case under chapter 7 of the Bankruptcy Code upon the conversion of a Case.  Upon entry of

this Interim Order, the DIP Obligations will include all loans and any other indebtedness or

obligations, contingent or absolute, which may now or from time to time be owing by the

Debtors to the DIP Lender under the DIP Documents or this Interim Order, including, without

limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant

to the DIP Documents.  The DIP Obligations shall be due and payable, without notice or demand

on the earliest to occur of (a) August 2, 2011 (provided, however, that the DIP Obligations will

be extended for an additional seven (7) months unless the Prepetition Lenders each agree

otherwise); (b) the effective date of any plan of reorganization or liquidation in these Cases; (c)

the date on which any of the Cases are converted to a case under chapter 7 of the Bankruptcy

Code; (d) the date on which the acceleration of the DIP Facility and the termination of the

commitments with respect to the DIP Facility occurs in accordance with the DIP Documents; (e)

the date of the closing of the sale of all or substantially all of the Debtors' assets; (f) the date on

which all obligations outstanding under the DIP Facility are paid in full and the commitments

under the DIP Facility have terminated; or (g) the dismissal of any of the Cases (the earliest of

such dates, the "Maturity Date").

     5.    DIP Liens and DIP Collateral.  Effective immediately upon the execution of this

Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d)(1) of the

Bankruptcy Code:  (a) the DIP Lender is hereby granted continuing, valid, binding, enforceable,

non-avoidable and automatically and properly perfected postpetition security interests in and

liens (the "DIP Liens") on all existing and after acquired real and personal property, and other

assets of the Debtors, tangible and intangible, whether now owned by or owing to, or arising in

favor of the Debtors, whether owned or consigned by or to, or leased from or to the Debtors (to

the full extent of the Debtors' interest therein), and regardless of where located, including,

without limitation, the following (collectively, the "<u>DIP Collateral</u>"):[2] (A) all Collateral (as

defined in the DIP Documents) and the proceeds thereof, (B) all avoidance power claims and

actions under section 549 of the Bankruptcy Code relating to any post-petition transfer of DIP

Collateral and any proceeds thereof, (C) any previously unencumbered assets of any Debtor, and

(D) proceeds and products, whether tangible or intangible, of any of the foregoing, including

proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible

property resulting form the sale, exchange, collection or other disposition of any of the

foregoing, or any portion thereof or interest therein.

   6. <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations shall be

continuing, valid, binding, enforceable, non-avoidable and automatically perfected security

interests and liens junior only to (a) the Carve Out, (b) all of the BofA Prepetition Liens, and (c)

all adequate protection claims and liens granted to BofA pursuant to this Interim Order.  Other

than as specifically set forth herein, the DIP Liens shall not be made subject to or *pari passu* with

any lien or security interest heretofore or hereinafter granted in the Cases.  The DIP Liens shall

be valid and enforceable against any trustee or other estate representative appointed in the Cases,

including, without limitation, upon the conversion of any of the Cases to a case under chapter 7

of the Bankruptcy Code, and/or upon the dismissal of the Cases.  The DIP Liens shall not be

subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or, upon entry of the Final

Order, section 506(c) of the Bankruptcy Code.

---

[2]  All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents.  All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such

7.      DIP Superpriority Claim.  Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases (collectively, the "DIP Superpriority Claim") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the Carve Out and the adequate protection claims granted to BofA, and otherwise the DIP Superpriority Claims shall have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in the Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code (including, subject to entry of the Final Order, section 506(c)), and at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.      No Obligation to Extend Credit.  The DIP Lender shall not have any obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such loan under the applicable DIP Documents and this Interim Order have been satisfied in full or waived in writing by the DIP Lender.

9.      Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtors shall use loans under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Documents and in substantial compliance with the Budget, which sets forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a rolling weekly basis and all necessary and required cumulative expenses which the Debtors expect to

---

terms in Article 8 or 9 of the Uniform Commercial Code.

incur during each week of the Budget; provided, however, that for any week in the Budget, the

amounts for each line item may vary 20% up to a 15% aggregate variance of the total amount

provided for any week in the Budget, but as provided for in the DIP Credit Agreement, the

failure to comply with such variances shall not constitute an Event of Default under the DIP

Credit Agreement.

10.     Rights of Access and Information. Without limiting the rights of access and

information afforded the DIP Lender under the DIP Documents, the Debtors are authorized and

directed to afford representatives, agents and/or employees of the DIP Lender reasonable access

to the Debtors' premises and their books and records in accordance with the DIP Documents, and

are authorized and directed to reasonably cooperate, consult with, and provide to such persons all

such information as may be reasonably requested.

**Authorization to Use Cash Collateral and for Adequate Protection**

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this

Interim Order and the DIP Documents (including, without limitation, paragraph 10 of this

Interim Order), the Debtors are authorized to use Cash Collateral in accordance with the Budget

until the earliest to occur of a Maturity Date or entry of the Final Order; provided, however, that

during the Remedies Notice Period (as defined below) the Debtors may use Cash Collateral in

accordance with the terms and provisions of the Budget solely to meet payroll obligations and to

pay expenses critical to the preservation of the Debtors and their estates as agreed to by the DIP

Lender and the Prepetition Lenders in their sole discretion.  Nothing in this Interim Order shall

authorize the disposition of any assets of the Debtors or their estates outside the ordinary course

of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom,

except as permitted in this Interim Order, the DIP Facility, the DIP Documents and in

accordance with the Budget or otherwise as approved by the Court.

18

12.    Adequate Protection Liens.

(a)    *Adequate Protection Liens*.  Pursuant to sections 361 and  363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such interests, the Debtors hereby grant to the Prepetition Lenders, continuing valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

(b)    *Priority of Adequate Protection Liens.*  The Adequate Protection Liens shall be subordinate to the Carve Out and junior to the BofA Prepetition Liens.  The Adequate Protection Liens granted to the Prepetition Lenders other than BofA shall be junior to the DIP Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral.  Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases, and shall be valid and enforceable against any trustee appointed in the Cases or upon the dismissal of the Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.    Adequate Protection Superpriority Claims.

(a)    *Adequate Protection Superpriority Claims*.  As further adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Lenders are each hereby

19

granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases (the "<u>Adequate Protection Superpriority Claims</u>").

       (b)     *Priority of Adequate Protection Superpriority Claims.*  The Adequate Protection Superpriority Claims shall be subordinate to the Carve Out.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Adequate Protection Superpriority Claims granted to the Prepetition Lenders other than BofA shall be subordinate to the DIP Superpriority Claim.

       14.     <u>Adequate Protection Payments and Protections</u>.  As further adequate protection, the Debtors are authorized to and shall provide adequate protection to (i) the Prepetition Lenders in the form of ongoing payment of the reasonable legal fees and expenses (subject to the review period set forth in Paragraph 3 of this Interim Order) incurred after the Petition Date, and (ii) BofA in the form of payment of accrued interest at the rate provided for in and pursuant to the terms of the BofA Note and the BofA Loan Agreement.

       15.     <u>Section 507(b) Reservation</u>.  Nothing herein shall impair, limit or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Lenders pursuant to this Interim Order is insufficient to

compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

16.      <u>Budget Maintenance</u>.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Lender (in consultation with the Prepetition Lenders) in its sole discretion.

17.      <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Lender or the Prepetition Lenders each may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Lender and Prepetition Lenders under the DIP Documents, the DIP Facility and this Interim Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Lender and Prepetition Lenders to retain and apply, payments made in accordance with the terms of this Interim Order.

18.      <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection

Liens, or to entitle the DIP Lender and the Prepetition Lenders to the priorities granted herein.

Notwithstanding the foregoing, each of the DIP Lender and the Prepetition Lenders is authorized

to file, as it deems necessary or advisable, such financing statements, mortgages, notices and

other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to

otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such

financing statements, mortgages, notices and other documents shall be deemed to have been filed

or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be

necessary or required in order to create, evidence or perfect the DIP Liens and/or the Adequate

Protection Liens.  The Debtors are authorized to and shall execute and deliver promptly upon

demand to the DIP Lender and the Prepetition Lender all such financing statements, mortgages,

title insurance policies, notices, instruments, and other documents as the DIP Lender or the

Prepetition Lenders may request.  The DIP Lender and the Prepetition Lender may file a

photocopy of this Interim Order as a financing statement or notice with any filing or recording

office or with any registry of deeds or similar office, in addition to or in lieu of such financing

statements, mortgages, notices of lien, instrument, or similar document.

19.    Maintenance of DIP Collateral and Cash Management System.  Until the

indefeasible payment in full in cash of all DIP Obligations, and the termination of the DIP

Lender's obligation to extend credit under the DIP Facility, the Debtors are authorized and

directed to:  (a) insure the DIP Collateral as required under the DIP Documents; and (b) maintain

the cash management system in effect as of the Petition Date, as modified by any order that may

be entered by the Court which has first been agreed to by the DIP Lender and the Prepetition

Lenders, or as otherwise agreed to by the DIP Lender, in its sole discretion, or as otherwise

required by the DIP Documents or by order of the Court upon appropriate notice.

20.    <u>Disposition of DIP Collateral; Rights of DIP Lender and the Prepetition Lenders</u>.
The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the
DIP Collateral outside the ordinary course of business without the prior written consent of the
DIP Lender and the Prepetition Lenders or otherwise ordered by the Court.

21.    <u>Right to Credit Bid</u>.  Subject to paragraph 27 below, each of the DIP Lender and
the Prepetition Lenders shall have the right to credit bid with respect to any sale of assets or
equity under either section 363 of the Bankruptcy Code or a plan of reorganization, the amount,
(i) with respect to the DIP Lender, such lender advanced under the DIP Facility that is
outstanding at the time of the sale, and (ii) with respect to the Prepetition Lenders, such lender's
portion of the Prepetition Obligations, which credit bid rights under section 363(k) of the
Bankruptcy Code or otherwise shall not be impaired in any manner.  For the avoidance of
ambiguity, subject to paragraph 27 below, no future order or plan of reorganization may impair
the credit bid rights of the DIP Lender or the Prepetition Lenders.

22.    <u>Postpetition Financing Termination</u>. On the Maturity Date, (a) all DIP Obligations
shall be immediately due and payable, (b) all commitments to extend credit under the DIP
Facility will terminate, and (c) all authority to use Cash Collateral shall cease; <u>provided</u>,
<u>however</u>, that during the Remedies Notice Period, the Debtors may use Cash Collateral solely as
set forth in paragraph 12 hereof.

23.    <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit
Agreement, as set forth therein, including, but not limited to, the failure to comply with any of
the terms of this Interim Order, shall constitute an event of default (an "<u>Event of Default</u>") under
this Interim Order, unless waived in writing by the DIP Lender.

24.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence

and during the continuation of an Event of Default, the DIP Lender, in accordance with the terms

of the DIP Credit Agreement, shall be entitled to declare (a) all DIP Obligations owing under the

DIP Documents to be immediately due and payable, (b) the termination or restriction of any

further commitment to extend credit to the Debtors to the extent any such commitment remains,

(c) the termination of the DIP Credit Agreement and any other DIP Document as to any future

liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP

Obligations; and/or (d) and, in consultation with the Prepetition Lenders, may declare a

termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, except

as provided in paragraph 12 hereof during the Remedies Notice Period defined below (any such

declaration shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination

Declaration shall be given by email, facsimile (or other electronic means) to (i) counsel to the

Debtors, (ii) counsel to the Prepetition Lenders, (iii) counsel for the creditors' committee or, if no

committee has been appointed, the creditors listed on the list of the top-30 largest unsecured

creditors, and (iv) the UST (the earliest date any such Termination Declaration is received by

counsel to the Debtors prior to 5:00 p.m. prevailing eastern time shall be referred to herein as the

"<u>Termination Declaration Date</u>").  The DIP Obligations shall be due and payable, without notice

or demand, and the ability of the Debtors to use Cash Collateral shall automatically terminate or

be reduced or restricted on the Termination Declaration Date, as provided in the applicable

Termination Declaration except as provided in paragraph 12 during the Remedies Notice Period.

For the period that is seven (7) Court days after the Termination Declaration Date (the

"<u>Remedies Notice Period</u>"), the Debtors shall be entitled, upon appropriate notice to the parties

entitled to receive notice of the Termination Declaration, to seek an emergency hearing with the

Court.  Unless the Court determines during the Remedies Notice Period that an Event of Default

has not occurred or enters an order precluding the exercise of remedies, and subject to the rights,

remedies, claims and liens of the Prepetition Lenders as provided for in this Interim Order, the

automatic stay shall automatically be terminated at the end of the Remedies Notice Period

without further notice or order and the DIP Lender shall be permitted to exercise all remedies set

forth in the DIP Credit Agreement and the DIP Documents, as applicable, and as otherwise

available at law or in equity against the DIP Collateral, as the case may be, without further order

of or application or motion to the Court, and without restriction or restraint by any stay under

sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens

and security interests in the DIP Collateral or any other rights and remedies granted to the DIP

Lender with respect thereto pursuant to the DIP Credit Agreement, the DIP Documents, this

Interim Order or applicable law.

25.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or
Stay of this Interim Order</u>.  The DIP Lender has acted in good faith in connection with this

Interim Order and its reliance on this Interim Order is in good faith.  Based on the findings set

forth in this Interim Order and the record made during the Interim Hearing, and in accordance

with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this

Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or

any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the

Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the extent,

validity, perfection, priority, allowability, enforceability or non-avoidability of any advances

previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or

created hereby.  Any liens or claims granted to the DIP Lender hereunder arising prior to the

effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.    Carve Out.

(a)    *Carve Out*.  As used in this Interim Order, "Carve Out" means the following expenses:  (i) statutory fees payable to the UST pursuant to 28 U.S.C. § 1930(a)(6), including any interest on such fees at the applicable rate that is owed by the Debtors; (ii) subject to the terms and conditions of this Interim Order, (x) all professional fees and disbursements by counsel to the Debtors retained by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) pursuant to sections 327 of the Bankruptcy Code (the "Case Professionals"), and (y) up to the sum of $50,000 for the fees and expenses of a trustee appointed upon conversion of the case to chapter 7, to the extent allowed or later allowed by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) under sections 328, 330 and/or 331 of the Bankruptcy Code and any interim compensation procedures order (the "Allowed Professional Fees"), but solely to the extent such Allowed Professional Fees are within the corresponding amounts set forth in the Budget; provided, however, that, upon an Event of Default under the DIP Documents, the amount of the Carve Out shall not exceed $50,000 plus the amount of the professional fees and expenses incurred in accordance with the Budget prior to such Event of Default.  It is acknowledged by the Debtors,  DIP Lender and the Prepetition Lenders that in the event a creditors committee is appointed in these cases, the professionals retained by such committee shall be entitled to the benefit of the Carve-Out under terms and conditions to be negotiated prior to the entry of a  Final Order (the "Committee Carve-Out").

(b)      *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees*.  The DIP Lender and the Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases.  Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Lender or the Prepetition Lenders in any way to pay compensation to or to reimburse expenses of any Case Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out if actual Allowed Professional Fees are higher in fact than reflected in the Budget or estimated fees and disbursements of Case Professional reflected in the Budget; or (iii) as consent to the allowance of any professional fees or expenses of any Case Professionals.  Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.  The DIP Lender's and the Prepetition Lenders' liens and claims granted pursuant to this Interim Order shall, however, be subject and subordinate to the Carve Out as set forth in this Interim Order.

27.      <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. Any party in interest, including a creditors' committee, granted standing (other than the Debtors and their successors, with the exception of a chapter 7 or 11 trustee appointed during the Challenge Period (as defined below)) by the Court, may seek to avoid, object to or otherwise challenge the findings or Debtors' stipulations in this  Interim Order regarding (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition Lenders or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations.  A party must commence, as appropriate, a contested matter or

adversary proceeding raising such claim, objection, defense, or other challenge, including, without limitation, any claim against any of the Prepetition Lenders in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations or the Prepetition Liens (each, a "Challenge") within sixty (60) calendar days following the date of entry of the Final Order (the "Challenge Period").  The Challenge Period may only be extended with the written consent of the applicable Prepetition Lender.  Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge (or if any such Challenge is filed and overruled):  (A) any and all such Challenges by any party (including, without limitation, any chapter 11 trustee and/or any examiner or other estate representative appointed or elected in these Cases, shall be deemed to be forever waived and barred, and (B) all of the Debtors' stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each of the Prepetition Lender's, claims, liens, and interests as set forth herein shall be of full force and effect and forever binding upon all the Debtors' estate and all creditors, interest holders, and other parties in interest in these Cases.  To the extent that a Challenge is timely filed but does not expressly challenge all of the Debtors' stipulations, or to the extent any creditor, interest holder and other party interest does not file any timely Challenge, all such unchallenged Debtors' stipulations shall be of full force and effect and forever binding upon all the Debtors' estates and all creditors, interest holders, and other parties in interest in these Cases, notwithstanding any timely-filed Challenge.

28.    Rights of Recoupment or Setoff.  Notwithstanding anything to the contrary in this Interim Order, nothing in this Interim Order shall (a) compromise, modify or affect the ability of any party in interest to assert a right of recoupment or setoff with respect to amounts allegedly

owed to the Debtors, or (b) create any right of recoupment or setoff with respect to amounts allegedly owed to the Debtors.

29.      <u>Section 506(c) Claims</u>.  Upon entry of the Final Order granting such relief and subject to the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Lender or the Prepetition Lenders or any of their respective claims, the DIP Collateral or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the affected DIP Lender or Prepetition Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lenders.

30.      <u>No Marshaling/Applications of Proceeds</u>.  The DIP Lender and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

31.      <u>Section 552(b)</u>.  The DIP Lender and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or any Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

32.      <u>Discharge Waiver</u>.  Subject to entry of the Final Order, the Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of sections 524 and/or 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtors

shall not propose or support any plan of reorganization or sale of all or substantially all of the

Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the

payment in full in cash, on the effective date of such plan of reorganization or such sale, of all

DIP Obligations.

     33.    <u>Rights Preserved</u>.

     (a)    Notwithstanding anything herein to the contrary, in the case of an Event of

Default under the DIP Credit Agreement, the entry of this Interim Order is without prejudice to,

and does not constitute a waiver of, expressly or implicitly, the DIP Lender's or the Prepetition

Lenders' right under the Bankruptcy Code or under non-bankruptcy law including, but not

limited to, the right (i) to seek any other or supplemental relief in respect of any Debtors; (ii) to

request modification of the automatic stay of section 362 of the Bankruptcy Code; (iii) to request

dismissal of any of the Cases, conversion of any of the Cases to a case under chapter 7, or

appointment of a chapter 11 trustee or examiner with expanded powers; or (iv) to propose,

subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

     (b)    Other than as expressly set forth in this Interim Order, any other rights,

claims or privileges (whether legal, equitable or otherwise) of the DIP Lender and the Prepetition

Lenders are preserved.

     34.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Lender or the

Prepetition Lenders to seek relief or otherwise exercise their respective rights and remedies

under this Interim Order, the DIP Documents, the Prepetition Credit Documents or applicable

law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder,

or otherwise of the applicable DIP Lender or any Prepetition Lender.

35.    <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, the Prepetition Lenders, all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, or upon dismissal of any of the Cases.

36.    <u>No Modification of Interim Order</u>.  Subject to entry of the Final Order, until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) (with full cash collateral provided for any contingent obligation (other than any indemnification obligations) that have not yet matured) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly, without the prior written consent of the DIP Lender: (i) any modification, stay, vacatur or amendment to this Interim Order (and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender); (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Cases equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out; or (iii) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents.

37.    <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and

conditions of the DIP Documents and this Interim Order, the provisions of this Interim Order

shall govern and control.

38.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of

the Bankruptcy Code; (c) dismissing any of the Cases; (d) discharging the Debtors; or (e)

pursuant to which this Court abstains from hearing any of the Cases.  The terms and provisions

of this Interim Order, including the claims, liens, security interests and other protections granted

to the DIP Lender and the Prepetition Lenders pursuant to this Interim Order and/or the DIP

Documents, notwithstanding the entry of any such order, shall continue in any of the Cases, or

following dismissal of any of the Cases, and shall maintain their priority as provided by this

Interim Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid

in full in cash, and all commitments to extend credit under the DIP Facility are terminated.  The

terms and provisions of the DIP Credit Agreement concerning the indemnification of the DIP

Lender shall continue in any of the Cases, following dismissal of any of the Cases, and following

termination of the DIP Documents and/or the repayment of the DIP Obligations.

39.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final

approval of the DIP Facility is scheduled for March 24, 2011 at 11:00 a.m. (Eastern Time) before

the Honorable Allan L. Gropper, United States Bankruptcy Judge, Courtroom 617 on the 6th

floor of the United States Bankruptcy Court for the Southern District of New York.  On or before

two business day after the Court enters this Interim Order, the Debtors shall serve, by United

States mail, first-class postage prepaid, or by electronic delivery, notice of the entry of this

Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with a copy of this

Interim Order and the Motion, on: (a) the parties having been given notice of the Interim

Hearing; and (b) any party which has filed prior to such date a request for notices with this

Court. The Final Hearing Notice shall state that any party in interest objecting to the entry of the

proposed Final Order shall file written objections with the Clerk of the Court no later than on [

] at 4:00 p.m. (Eastern Time), which objections shall be served so as to be received on or before

such date by: (i) counsel to the Debtors, attn: David B. Shemano, Esq., Peitzman Weg &

Kempinsky, LLP, 2029 Century Part East, Suite 3100, Los Angeles, CA 90067; (ii) counsel to

DIP Lender, attn: Alan E. Gamza, Esq., Moses & Singer LLP, The Chrysler Building, 405

Lexington Avenue, New York, NY 10174-1299; (iii) counsel to BofA, attn:  William E.

Hirschberg, Esq and Susan A. Fennessey, Esq.., Shearman & Sterling LLP, 599 Lexington

Avenue, New York, NY 10022; (iv) counsel to Praesidian, Stephen I. Budow, Esq., Morrison

Cohen LLP, 909 Third Avenue, New York, NY 1002-4784, and (v) the UST, attn: Nazar

Khodorovsky, Esq., trial attorney, 33 Whitehall Street, 21st Floor, New York, NY 10004.

40.    Effect of this Interim Order.  This Interim Order shall constitute findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be

enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

41.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce

this Interim Order according to its terms.

Dated: March 4, 2011
        New York, New York

            __/s/ Allan L. Gropper_____
            UNITED STATES BANKRUPTCY JUDGE