Jonathan L. Flaxer, Esq.
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300

David B. Shemano, Esq.
PEITZMAN, WEG & KEMPINSKY LLP
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
(310) 552-3100

Proposed Counsel for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CLUB VENTURES INVESTMENTS LLC, et al.,[1] ) | Case No. 11-10891 (ALG) |
| ) | |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**DEBTORS' APPLICATION FOR ORDER AUTHORIZING DEBTORS TO EMPLOY FOCALPOINT SECURITIES, LLC AS FINANCIAL ADVISOR**

Club Ventures Investments LLC ("**Club Ventures**") and certain of its subsidiaries, as debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby move for entry of an Order approving the Debtors' Application For Order Authorizing Debtors To Employ FocalPoint Securities, LLC ("**FocalPoint**") As Financial Advisor (the "**Application**"). In support of this Application is the Declaration of Duane Stullich (the "**Stullich Declaration**") attached hereto as Exhibit A.

**I.**

---

[1] Jointly Administered with Case Nos.: 11-10892; 11-10894; 11-10893; 11-10896; 11-10895; 11-10897; 11-10900; 11-10898; 11-10899; 11-10901; 11-10902; 11-10903; 11-10905; 11-10904; 11-10906; 11-10907; 11-10908.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtors' bankruptcy estates (the "**Estates**") and, accordingly, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**").

## II.

## GENERAL BACKGROUND

2. On March 2, 2011 (the "**Petition Date**"), the Debtors commenced voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 4, 2011, the Bankruptcy Court entered its Orders jointly administering the Debtors' Chapter 11 Cases. An official committee of unsecured creditors was appointed on March 18, 2011.

3. Club Ventures and its twenty-one (21) subsidiaries (the "**Subsidiaries**", together with Club Ventures, the "**Company**") are a premiere boutique gym company operating stylish, upscale fitness clubs in four metropolitan areas in the United States. The Company primarily targets individuals in the 18-40 year age range. As of the Petition Date, the Company operated six fitness clubs in the following locations: (a) three fitness clubs in New York, New York; (b) one fitness club in Chicago, Illinois; (c) one fitness club in Miami Beach, Florida; and (d) one fitness club in Bellevue, Washington. Collectively, the clubs serve approximately 13,500 members (the "**Club Members**").

4.     The majority of the Company's revenues derive from the commercial operation of the fitness centers. The Company's model is differentiated from other commercial fitness centers by its focus on personal training. As a result, the revenue collected per member is higher, on average, than competing fitness centers.

5.     From 2005 through 2009, the Company embarked on an ambitious expansion plan. During that period, the Company signed seven new real estate leases representing an additional 198,000 square feet of space, and opened six new fitness centers. While the Company was able to raise capital to fund the expansion, by 2008 the Company was incurring substantial losses from operations and generating negative cash flow. Various efforts to reverse the operating losses were unsuccessful. Consequently, in the fourth quarter of 2010, the Company determined to implement a significant change to its business plan. The Company replaced certain senior management and prepared a comprehensive plan to implement a restructuring of the Company. The comprehensive plan contemplates a financial restructuring of the balance sheet, an operational restructuring of the Company's fitness centers, as well as significant reductions in certain corporate costs. The Company also has begun introducing new initiatives to enhance revenue and cash flow. After careful analysis, taking into consideration the existence of pending litigation, the need to modify and/or terminate existing leases, and the need to convert certain existing debt into equity, the Company concluded that its restructuring plan should be implemented through a chapter 11 proceeding.

### III.
### DEBTORS SEEK AUTHORIZATION TO EMPLOY FOCALPOINT AS FINANCIAL ADVISOR

6.     The Debtors seek authorization to employ FocalPoint Securities, LLC ("**FocalPoint**") as financial advisor under the terms of the engagement agreement dated March 22, 2011, attached hereto as Exhibit B (the "**Engagement Agreement**"). The Debtors require a financial advisor to provide financial and business advisory services in connection with the confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code (the "**Plan**").

Scope Of Services To Be Performed

7. As set forth in the Engagement Letter, the Debtors seek to employ FocalPoint to render the following services to the Debtors in connection with confirming the Plan:

(a) prepare a valuation of the Company as a "going concern" and provide testimony in support thereof, if required;

(b) prepare an analysis of the value of the Company in a liquidation scenario and provide testimony in support thereof, if required; and

(c) analyze the feasibility of the Plan and provide testimony based on such analysis, if required.

Qualifications of FocalPoint

8. FocalPoint is an independent financial advisory firm and investment bank, specializing in advising distressed businesses and their stakeholders with respect to all aspects of financial restructurings and distressed transactions. The professional biographies of FocalPoint's managing directors are attached collectively hereto as Exhibit C.

9. FocalPoint and its principals have advised numerous debtors and creditors committees in bankruptcy proceedings over the past 10 years, including, among others, *Magic Brands, Inc. (dba Fuddruckers), Home Organizers, Inc., Insight Health Services, Inc., Care Level Management Group, LLC, Bodies in Motion, Inc., Small World Toys, The Walking Company, Shoe Pavilion Inc., AGT Crunch Acquisition LLC, LandSource Communities Development LLC, Fleetwood Enterprises, Inc., Spectrum Restaurant Group, Winn-Dixie Stores, APS Holding Company, Pillowtex Corporation, Functional Restoration Medical Centers, Consolidated Freightways, Yipes Telecommunications, Inc., Solo Serve Corporation*, and *Montgomery Ward*.

10. FocalPoint is an experienced advisor with respect to the fitness club industry, having been retained as financial advisor to (a) the debtors in *In re AGT Crunch Acquisition LLC, et al.*, Case No. 09-12893 (Bankr. S.D.N.Y.); (b) the debtors in *In re Bodies in Motion, Inc.* Case No. 06-10931 (Bankr. C.D. Cal.); (c) Pla-Fit Health LLC (dba Planet Fitness) in its

acquisition of World Gym, Inc., (d) Douglas Emmett, Inc. in its sale of The Honolulu Club to Meridian Sports Clubs of California, LLC, and (e) Santa Barbara Flex, LLC (dba Gold's Gym) in its sale to Spectrum Clubs.

11. The Debtors are familiar with the experience and reputation of FocalPoint, and the experience and reputation of FocalPoint was a critical element in the Debtors' decision to enter into the Engagement Agreement between the Debtors and FocalPoint. FocalPoint is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner to provide the services set forth above, which are critical to the success of the Debtors' restructuring plan.

Compensation For Services

12. The Fee Structure provides for the following compensation:

(a) An initial fee in the amount of $35,000 payable upon entry of an order by the Court approving FocalPoint's employment (the "**Initial Fee**");

(b) To the extent that FocalPoint is requested or required to appear in Bankruptcy Court to provide testimony regarding the services provided pursuant to the services described above or professional(s) of FocalPoint are required to attend depositions or be deposed related to the services provided to the Debtors pursuant to the services described above (the "**Additional Services**"), FocalPoint will receive additional compensation in the amount of $2,500 per day per person for each day or material portion of each partial day required to provide such Additional Services;

(c) FocalPoint shall be entitled to reimbursement of all necessary, documented, reasonable out-of-pocket expenses incurred in the performance of services for the Debtors in a manner consistent with Guidelines established by the Office of the United States Trustee for the Southern District of New York (the "Guidelines"), including, but not limited to, travel and lodging (approved in advance), data processing and communication charges, courier services, reasonable legal fees and other necessary expenditures (the "**Reasonable Expenses**"); and

7

(d) As part of the compensation payable to FocalPoint, the Debtors agree to the indemnification, contribution, and related provisions of the indemnification agreement (the "**Indemnification Agreement**") entered into along with the Engagement Agreement.

13. In determining the Fee Structure to be paid to FocalPoint and the reasonableness of such compensation, the Debtors compared FocalPoint's fee proposal to other proposals received by the Debtors in the financial advisor selection process. The Debtors determined that the Fee Structure is reasonable and typical of compensation agreements entered into by FocalPoint and other comparable firms in connection with the rendering of similar services under similar circumstances.

14. Given the nature of FocalPoint's engagement, FocalPoint will not be billing the Debtors by the hour and will not be keeping records of time spent for professional services rendered in this case, although FocalPoint will be maintaining reasonably detailed records of the services that were rendered pursuant to its engagement and a detailed record of all out-of-pocket expenditures in accordance with the Guidelines. Accordingly, to the extent necessary, based on the foregoing, the Debtors respectfully seek a waiver of the information requirements set forth in Local Bankruptcy Rule 2016-1.

15. Furthermore, given the agreement of FocalPoint a receive flat fee of $35,000 (plus reimbursement of expenses), the Debtors' request that the compensation arrangement be approved under section 328(a) of the Bankruptcy Code and that the Court waive any requirement that FocalPoint be required to file any interim or final fee applications as a condition to payment. More specifically, the Debtors request that the Debtors be authorized to pay FocalPoint: (a) the Initial Fee, (b) up to $10,000 for Additional Services, and (c) up to $10,000 for Reasonable Expenses, without further notice, Order of the Court, or any requirement to file any application or be subject to any standard of review under section 330 or 331 of the Bankruptcy Code (provided that such payments will be reflected in the Debtors' monthly reports). With respect to any additional amounts, the Debtors will file an application for authority to pay such amounts or will seek approval for such amounts in connection with confirmation of the Debtors' plan of

reorganization. Furthermore, the payment of any amounts to FocalPoint (including the Initial Fee and any Additional Expenses and Reasonable Expenses authorized to be paid without further Court order) will be without prejudice to the right of any interested party to seek relief at any time under section 328(a) with respect to the terms and conditions of FocalPoint's compensation.

16. FocalPoint did not receive any prepetition payment from the Debtors, and the Debtors do not owe FocalPoint any fees for services performed or expenses incurred under the Engagement Letter prior to the Petition Date.

Indemnification

17. Because FocalPoint will be acting on the Company's behalf during the course of this engagement, the Debtors have agreed to indemnify and hold harmless FocalPoint from and against (1) any action taken by the Company, (b) any action taken by FocalPoint in connection with its services under the Engagement Agreement, and (c) any untrue statement of a material fact contained in, or any omission of any material fact from, any document or information supplied by the Company to FocalPoint for transmission to any interested parties by or on behalf of the Company, except for gross negligence or willful misconduct, as more fully set forth in the indemnification agreement included as Attachment A to the Engagement Agreement. It is customary for FocalPoint, acting as an independent contractor in providing financial advisory services to the Debtors, to receive such indemnification, and the Debtors request that the indemnity provisions set forth in Attachment A of the Engagement Letter be approved by the Court.

Employment Under 11 U.S.C. §§ 327(a) and 328(a)

18. The Debtors should be authorized to employ FocalPoint as financial advisor pursuant to Bankruptcy Code sections 327(a) and 328(a). To the best of FocalPoint's knowledge and after conducting an investigation of potential conflicts of interest, FocalPoint is a disinterested person and does not hold or represent an interest adverse to the Estates and does not have any connection with the Debtors, the creditors, or any other party in interest in these

Chapter 11 Cases, or their respective attorneys or accountants, as stated in the Stullich Declaration.

19. FocalPoint is not presently engaged by any creditors or parties in interest with respect to these Chapter 11 Cases except as otherwise stated herein. In matters unrelated to the Debtors and these Chapter 11 Cases, FocalPoint in the past may have been engaged by, or in the future may be engaged by, one or more creditors of the Debtors or other parties in interest in the Debtors' Chapter 11 Cases. Specifically, FocalPoint in the past has provided, and in the future may provide, services to (i) Peitzman, Weg & Kempinsky LLP, proposed counsel to the Debtors, (ii) Meridian Sports Clubs of California, LLC ("**Meridian**"), which, through its principal Charles Grieve, serves as the manager of the Debtors' operating entities with authority over all aspects of day-to-day operations, and (iii) Praesidian Capital Investors, LLP ("**Praesidian**"), which is one of the Debtors' secured lenders and equity holders. Most recently, FocalPoint (i) provided fund raising services to Praesidian in November 2010 for which some portion of its fee is still outstanding; the outstanding fee is approximately 2% of FocalPoint's estimated revenues in 2011 and the only outstanding amounts owed by Praesidian to FocalPoint, and (ii) represented Meridian in raising funds from Praesidian in 2008; all fees were paid by 2009 and no amounts are currently owed by Meridian. In matters unrelated to the Debtors and these bankruptcy cases, FocalPoint in the past may have been engaged by or in the future may be engaged by, one or more creditors of the Debtors or other parties in interest in the Debtors' bankruptcy cases. Furthermore, in the ordinary course of its business FocalPoint routinely interacts and is involved with a broad network of capital markets participants in matters unrelated to these bankruptcy cases. Included among such participants are Bank of America and Key Equipment Finance, which are creditors of the Debtors. FocalPoint does not believe such relationships, as described above, constitute an actual or potential conflict. FocalPoint will supplement this disclosure and advise the Court if it becomes aware that any potential conflict has become actual or likely will become actual. The disclosures contained in the Stullich Declaration are incorporated herein by reference.

## IV.
## NOTICE

20. No trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the Southern District of New York, (b) counsel to the Debtors' secured creditors, (c) counsel to the official committee of unsecured creditors, (d) FocalPoint Securities, LLC; and (e) parties that have requested special notice. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

21. No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of an Order substantially in the form attached hereto as Exhibit E, granting the Debtors the relief requested herein and such other and further relief as is just.

Dated: Los Angeles, California
April 13, 2011

**PEITZMAN, WEG & KEMPINSKY LLP**

By: /s/ David B. Shemano
David B. Shemano
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
(310) 552-3100

and

Jonathan L. Flaxer, Esq.
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300

Proposed Counsel for Debtors and Debtors-in-Possession