# EXHIBIT B



FocalPoint Securities, LLC
11150 Santa Monica Blvd, Suite 1550
Los Angeles, CA 90025
310.405.7000 F 310.405.7077
www.focalpointllc.com

March 22, 2011

Mr. Stephen Schwartz
Chief Financial Officer
Club Ventures Investments LLC, Debtor in Possession
50 West 23rd Street, 5th Floor
New York, NY 10010

Re: Financial Advisory Engagement Agreement

Dear Mr. Schwartz:

This letter confirms the understanding and agreement ("Agreement") between FocalPoint Securities, LLC ("FocalPoint") and Club Ventures Investments LLC, Debtor in Possession (the "Company") regarding the retention of FocalPoint as the Company's financial advisor for the purposes set forth herein. For purposes hereof, the term "Company" includes subsidiaries and affiliates of the Company.

1. **Scope of Services.** Under this Agreement, FocalPoint will provide financial advisory services to the Company in connection with the confirmation of a Plan of Reorganization under Chapter 11 of the Bankruptcy Code (a "Plan"). In connection with this Agreement, FocalPoint will, to the extent requested by the Company:

(i) prepare a valuation of the Company as a 'going concern' and provide testimony in support thereof, if required;

(ii) prepare an analysis of the value of the Company in a liquidation scenario and provide testimony in support thereof, if required; and,

(iii) analyze the feasibility of the Plan and provide testimony based on our analysis, if required.

Notwithstanding anything contained in this Agreement to the contrary, FocalPoint shall have no responsibility for designing or implementing any initiatives to improve the Company's operating profitability. FocalPoint makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain sufficient liquidity to operate its business, or (iii) successfully confirm or effectuate a Plan.

2.  **Compensation.** FocalPoint's compensation for services rendered under this Agreement will consist of an initial fee (the "Initial Fee") in the amount of $35,000 payable upon entry of an order by the Bankruptcy Court approving FocalPoint's employment pursuant to the terms of this Agreement. In addition, to the extent that FocalPoint is requested or required to appear in Bankruptcy Court to provide testimony regarding the services provided pursuant to paragraph 1 above or professional(s) of FocalPoint are required to attend depositions or be deposed related to the services provided pursuant to paragraph 1 or for any other purpose requested by the Company (the "Additional Services"), FocalPoint will receive additional compensation in the amount of $2,500 per day per person for each day or partial day required to provide such Additional Services. Notwithstanding the foregoing, FocalPoint understands that the payment of any and all fees to FocalPoint are subject to approval of the Bankruptcy Court and any payment procedures for professionals established in the Company's bankruptcy case.

In addition, FocalPoint shall be entitled to reimbursement of all necessary, documented, reasonable out-of-pocket expenses incurred during this engagement. Such expenses include, but are not limited to, travel and lodging (approved in advance), data processing and communication charges, courier services, reasonable legal fees and other necessary expenditures.

The Company and FocalPoint acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Company of the work performed, in each case, in connection with this Agreement, may be variable, and that the Company and FocalPoint have taken this into account in setting the fees hereunder. FocalPoint shall be under no obligation to maintain any time records.

The advisory services and compensation arrangement set forth in this Agreement do not encompass any other investment banking services that may be undertaken by FocalPoint at the Company's request. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Company and FocalPoint.

3.  **Term of this Agreement and Termination.** This Agreement is terminable upon thirty (30) days prior written notice by the Company or FocalPoint; provided, *however*, that the termination of this Agreement shall not affect (a) the Company's indemnification, reimbursement, contribution and other obligations as set forth in this Agreement; (b) FocalPoint's obligations hereunder with respect to confidential information; or (c) FocalPoint's right to receive, and the Company's obligation to pay, any and all fees and expenses earned as of the effective date of termination of this Agreement which shall be immediately due and payable to FocalPoint unless this Agreement is terminated by (X) FocalPoint for any reason other than a material breach by the Company of this Agreement or if the Bankruptcy Court denies approval of this Agreement under section 328 of the Bankruptcy Code as more fully set forth in Section 5 below, or (Y) the Company due to FocalPoint's bad faith, gross negligence or willful misconduct.

4.     **Information and Confidentiality.**  The Company will furnish or cause to be furnished to FocalPoint such information as FocalPoint reasonably believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that FocalPoint (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (c) is entitled to rely upon the Information without independent verification.

In the event that the Information belonging to the Company is stored electronically on FocalPoint's computer systems, FocalPoint shall not be liable for any damages resulting from unauthorized access, misuse or alteration of any such information by persons not acting on its behalf, provided that FocalPoint exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as contemplated by the terms hereof or as required by applicable law or legal process, FocalPoint shall keep confidential all material non-public information provided to it by or at the request of the Company (including by the Company's advisors), and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with FocalPoint's performance of its responsibilities hereunder, have been informed by FocalPoint of the confidential nature of the Information and the obligations under this Agreement, and have executed and delivered a confidentiality agreement in form and substance acceptable to the Company.

All services, advice and information and reports provided by FocalPoint to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

5.     **Bankruptcy Court Approval.**  The Company shall use good faith efforts to seek approval of this Agreement pursuant to sections 327 and 328 of the Bankruptcy Code and FocalPoint's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code (the "Application to Employ"). The Company shall supply FocalPoint with a draft of the Application to Employ sufficiently in advance of its filing to enable FocalPoint and its counsel to review and comment theron. FocalPoint shall cooperate with the Company in the preparation of the application and will provide the Company and its counsel with the information and support necessary to prepare the application. FocalPoint shall have no obligation to provide any services under this agreement unless the terms of this agreement are approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration (other than under Fed. R. Civ. P. 60 or Fed. R. Bankr. P. 9024) or petition for certiorari, and which order is acceptable to FocalPoint in all respects.

FocalPoint acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, FocalPoint's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guidelines and orders.

6.     **Indemnification.** The Company acknowledges and agrees that FocalPoint has been retained to act solely as financial advisor to the Company, and not to any creditor, employee, shareholder, director or member of the Company. In such capacity, FocalPoint shall act as an independent contractor, and any duties of FocalPoint arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Because FocalPoint will be acting on the Company's behalf in this capacity, it is customary for FocalPoint to receive indemnification. A copy of FocalPoint's standard form of indemnification agreement is attached to this Agreement as Attachment A. FocalPoint recognizes that the indemnification obligations under this Section 6 and Attachment A will be subject to approval of the Bankruptcy Court.

7.     **Public References.** Upon the engagement of FocalPoint becoming public knowledge by means that are not in violation of Section 4, hereof, FocalPoint may utilize the Company's name, logo and transaction description in its tombstone announcements, firm literature, promotional and advertising materials.

8.     **CHOICE OF LAW; JURISDICTION; WAIVER OF JURY.** THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, PROVIDED THAT THE COMPANY IS NOT IN A BANKRUPTCY CASE, IN WHICH CASE THE BANKRUPTCY COURT SHALL BE THE COURT OF COMPETENT JURISDICTION. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY AND FOCALPOINT EACH CONSENTS TO SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN

CONNECTION WITH FOCALPOINT'S ENGAGEMENT IS HEREBY EXPRESSLY WAIVED BY BOTH THE COMPANY AND FOCAL POINT.

**9.** **Attorneys' Fees and Court Costs**. If any party to this Agreement brings an action directly or indirectly based upon this Agreement or the matters contemplated hereby against the other party, the prevailing party shall be entitled to recover, in addition to any other appropriate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees and court costs.

**10.** **Notices**. The Company hereby designates that any notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) to the Company, at its offices at 50 West 23rd Street, 5th Floor, New York, NY, 10010, Attention: Stephen Schwartz, Chief Financial Officer, with a copy (which shall not constitute notice to the Company) to Peitzman Weg & Kempinsky LLP, 2029 Century Park East, Suite 3100, Los Angeles, CA 90067, Attention: David Shemano; and (b) to FocalPoint, at its offices at 11150 Santa Monica Boulevard, Suite 1550, Los Angeles, CA 90025, Attention: Duane Stullich, Managing Director.

**11.** **Assignability**. The benefits of this Agreement shall inure to the parties hereto, their respective successors and assigns, and to the Indemnified Parties hereunder and their respective successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns; provided that FocalPoint may not assign its obligations under this Agreement without the written consent of the Company.

**12.** **Entire Agreement/Severability**. This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the subject matters hereof and provided for herein. If it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any term or provision hereof is invalid or unenforceable, (i) the remaining terms and provisions hereof shall be unimpaired and shall remain in full force and effect, and (ii) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision. No alteration, waiver, amendment, change, modification or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

**13.** **Counterparts**. For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement. Facsimile or electronically transmitted signatures to this Agreement shall have the same force and effect as original signatures.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to FocalPoint a duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,
FocalPoint Securities, LLC

By: _____
Duane K. Stullich
Managing Director

Confirmed and agreed to on March ___, 2011

CLUB VENTURES INVESTMENTS LLC

By: _____
Stephen Schwartz
Chief Financial Officer

EXHIBIT A

This Exhibit A is part of and is incorporated into that certain letter engagement agreement (the "Agreement") dated March 22, 2011 by and among Club Ventures Investments LLC (together with its subsidiaries and affiliates, the "Company") and FocalPoint Securities, LLC ("FocalPoint"). Any and all obligations and agreements of the Company under this Exhibit A shall be equally applicable to, and binding upon, each of the Company's subsidiaries and bankruptcy estates and any chapter 7 trustees appointed in the Company's bankruptcy cases.

Because FocalPoint will be acting on behalf of the Company in providing investment banking services pursuant to the Agreement, and as part of the consideration for the agreement of FocalPoint to furnish its services under the Agreement, the Company (the "Indemnifying Party") agrees, jointly and severally, to indemnify and hold harmless FocalPoint and its affiliates, and their respective officers, directors, partners, members, shareholders, employees, representatives and agents and each person, if any, who controls FocalPoint or any of its affiliates writing the meaning of the Securities Act of 1933, as amended, (FocalPoint and each such other person being referred to as an "Indemnified Person"), to the full extent lawful, from and against all claims, liabilities, losses, damages and expenses, or actions in respect thereof, as incurred, based upon related to, arising out of, or in connection with (i) actions taken or omitted to be taken by the Company and its affiliates, officers, directors, counsel, employees, members or agents, (ii) actions taken or omitted to be taken by any Indemnified Person pursuant to the terms of, or in connection with, the services rendered pursuant to the Agreement or in connection with any Restructuring (as defined in the Agreement) or proposed transaction contemplated thereby or any Indemnified Person's role in connection therewith, and (iii) any untrue statement or alleged untrue statement of a material fact contained in any information received by FocalPoint from the Company that is included in Offering Material, an executed purchase agreement, and any other document or information supplied by the Company to FocalPoint for transmission to any investors or acquirers or other interested parties by or on behalf of the Company, or any omission or alleged omission by the Company to state a material fact required to be stated therein to make the statements therein not misleading, and shall reimburse each Indemnified Person promptly upon demand for any reasonable legal or other reasonable expenses (including, without limitation, reasonable fees and expenses of counsel) reasonably incurred by that Indemnified Person in connection with investigating, preparing to defend, defending against, or appearing as a third party witness (other than as a witness in support of a Transaction or otherwise under the terms of the Agreement), in connection with such claims, liabilities, losses, damages, expenses or actions; provided, however, that the Indemnifying Party shall not be responsible for any claims, liabilities, losses, damages, expenses or actions of any Indemnified Person to the extent, and only to the extent, that it is determined in a final judgment (not subject to further appeal) by a court of competent jurisdiction that such claims, liabilities, losses, damages, expenses or actions resulted directly from the fraud, willful misconduct or gross negligence of the Indemnified Person. No Indemnified Person shall have any liability to the Company, or any of their respective affiliates, officers, directors, partners, members, shareholders, creditors, employees, representatives and agents or to any statutory Committee formed in these cases in connection with the services rendered pursuant to the Agreement except to the extent, and only to the extent, that it is determined in a final judgment (not subject to further appeal) by a court of competent jurisdiction that such claims, liabilities, losses, damages,

expenses or actions resulted directly from the fraud, willful misconduct or gross negligence of the Indemnified Person.

Promptly upon receipt by the Indemnified Person of notice of any claim or commencement of any action, if an indemnification claim in respect thereof is made against the Indemnifying Party, the Indemnified Person shall notify the Indemnifying Party in writing of the claim or commencement of such action; provided, however, that the failure to so notify shall not relieve the Indemnifying Party from any liability which it may have pursuant to this Exhibit A except to the extent, and only to the extent, that it has been materially prejudiced by such failure to so notify; and provided, further, that the failure to so notify shall not relieve the Indemnifying Party from any liability it may have to an Indemnified Person otherwise than pursuant to this Exhibit A. If any such claim or action shall be brought against an Indemnified Person, the Indemnifying Party shall be entitled to participate therein and to assume the defense thereof at its expense with counsel reasonably satisfactory to the Indemnified Person. After notice from the Indemnifying Party to the Indemnified Person of its election to assume the defense of each claim or action, the Indemnifying Party shall not be liable to the Indemnified Person under this Exhibit A for any legal or other expenses subsequently incurred by the Indemnified Person in connection with the defense thereof other than reasonable costs of investigation; provided, however, that any Indemnified Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof; and, provided, further, that Indemnifying Party shall continue to be liable for the legal or other expenses incurred by the Indemnified Person in connection with the defense of such action if (i) the employment of such separate counsel has been specifically authorized by the Indemnifying Party in writing, (ii) such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Indemnifying Party and in the reasonable judgment of such counsel it is advisable for the Indemnified Person to employ separate counsel (in which case the Indemnifying Party shall not have the right to assume the defense of such person on behalf of the Indemnified Person), (iii) the use of counsel chosen by the Indemnifying Party to represent the Indemnified Person would, in the reasonable judgment of the Indemnified person after advice from counsel, present such counsel with a conflict of interest, or (iv) the Indemnifying Party has failed to assume the defense of such action and employ counsel reasonably satisfactory to the Indemnified Person, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or separate but substantially similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time for all such Indemnified Persons. The Indemnifying Party shall not settle or compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action or claim in which any Indemnified Person is or could be a party and as to which indemnification or contribution has or could have been sought by such Indemnified Person pursuant to this Exhibit A, unless such Indemnified Person has given its prior written consent (not to be unreasonably withheld) to the settlement, compromise, consent or termination or such settlement, compromise, consent or termination includes an express complete and unconditional release of such Indemnified Person. Notwithstanding the foregoing, the aggregate contributions of all Indemnified Persons with respect to such claims, liabilities, losses, damages, expenses or actions in respect thereof shall not exceed the amount of fees actually received by FocalPoint for its services pursuant to the Agreement.

The foregoing indemnity, contribution and expense reimbursement provisions are not exclusive and shall be in addition to any liability which the Indemnifying Party might otherwise have and shall not limit any rights or remedies which may otherwise be available at law or in equity to the Indemnified Persons. These indemnification provisions shall (i) remain operative and in full force and effect regardless of any termination or expiration of the Agreement; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Person, and (iv) shall be binding on any successor or assign of the Indemnifying Party and each of its successors or assigns.