Jonathan L. Flaxer, Esq.
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300

David B. Shemano, Esq.
PEITZMAN, WEG & KEMPINSKY LLP
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
(310) 552-3100

Counsel for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLUB VENTURES INVESTMENTS LLC, <u>et al.</u>, | ) | Case No. 11-10891 (ALG) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN JUNIOR SECURED SUPERPRIORITY POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507, AND (B) UTILIZE CASH COLLATERAL OF PREPETITION SECURED LENDERS, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED LENDERS, <u>AND (III) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>") of Club Ventures Investments LLC ("<u>CV</u>") and its subsidiaries Club Ventures II, LLC (11-10892), CV 2, LLC (11-10894), CV II Gym, LLC (11-10893), Club Ventures III, L.L.C.( 11-10896), CV 3, LLC (11-10895), CV III Gym, LLC (11-10897), Club Ventures IV, LLC (11-10900), CV 4 Leasing, LLC (11-10898), CV IV Gym, LLC (11-10899), Club Ventures VI, LLC (11-10901), CV VI, LLC (11-10902), CV VII Gym, LLC (11-10903), Club Ventures VIII, LLC (11-10905), CV VIII Gym, LLC (11-10904), Club Ventures X, LLC (11-10906), CV X Gym, LLC (11-10907), DB 85 Gym Corp. (11-10908), as debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11

cases (collectively, the "Cases") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and S.D.N.Y. LBR 4001-2, seeking entry of an interim order and this final order (the "Final Order") *inter alia*:

(i)        authorizing the Debtors to obtain an aggregate amount not to exceed $800,000 of secured, superpriority post-petition financing, junior in priority to certain prepetition secured claims and adequate protection claims and liens granted to certain Prepetition Lenders (as defined below), and with administrative priority (the "DIP Facility") pursuant to the terms and conditions of that certain Junior Secured Super Priority Debtor-in-Possession Promissory Note, Security Agreement and Guaranty (as it may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Credit Agreement") by and among the Debtors and LNB Holding LLC ("Holding" or the "DIP Lender"), substantially in the form of Exhibit A attached to the Motion;

(ii)       authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related loan documents (collectively, the "DIP Documents") by and among the Debtors and the DIP Lender and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)      authorizing the Debtors (other than CV) to jointly and severally guaranty (the "DIP Guarantors") the DIP Credit Agreement and the obligations under the DIP Facility (the "DIP Guarantees") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iv)     granting to the DIP Lender allowed superpriority administrative expense claims in the Cases for the DIP Facility and all obligations owing thereunder and under the DIP Documents, including all indemnification obligations of the Debtors thereunder (collectively, and including all "Obligations" as described in the DIP Credit Agreement and in paragraph 4 of this Final Order, the "DIP Obligations"), subject to the priorities set forth in paragraph 7 of this Final Order;

(v)     granting to the DIP Lender, automatically perfected, valid and enforceable junior security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in paragraph 6 of this Final Order;

(vi)     authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, the fees and disbursements of the DIP Lender's counsel and other professionals, all to the extent provided by and in accordance with the terms of the DIP Documents;

(vii)     authorizing the Debtors' use of Cash Collateral of the Prepetition Lenders;

(viii)     providing adequate protection to the Prepetition Lenders for any diminution in value of their interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(ix)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents, the First Interim Order (as defined below), the Second Interim Order (as defined below) and this Final Order; and

(x) scheduling a final hearing to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

The United States Bankruptcy Court for the Southern District of New York (the "Court") having considered the Motion, Declaration of Steven Schwartz, Chief Financial Officer for the Debtors, in Support of First Day Pleadings, the exhibits attached thereto, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on March 3, 2011 (the "First Interim Hearing"), the second interim hearing held on March 24, 2011 (the "Second Interim Hearing") and the final hearing held on April 27, 2011 (the "Final Hearing"); notice of all such hearings having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014, and S.D.N.Y. LBR 4001-2; the First Interim Hearing, the Second Interim Hearing and the Final Hearing to consider the relief requested in the Motion having been held and concluded; the First Interim Order having been entered on March 4, 2011; the Second Interim Order having been entered on March 28, 2011; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; it appearing to the Court that granting the relief requested on a final basis is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON DEBTORS' STIPULATIONS AND THE RECORD ESTABLISHED AT THE FIRST INTERIM HEARING, THE SECOND INTERIM HEARING AND THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      *Petition Date*.  On March 2, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Court commencing these Cases.

B.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Creditors' Committee*.  On March 18, 2011, an Official Committee of Unsecured Creditors was appointed in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.      *Interim Orders*.  Following the First Interim Hearing and the Second Interim Hearing, this Court entered the first interim order (the "Fist Interim Order"), dated March 4, 2011, and the Second Interim Order (the "Second Interim Order"), dated March 28, 2011, respectively, which orders approved the DIP Facility and certain other relief requested in the Motion on an interim basis.

F.      *Stipulations and Findings Regarding Prepetition Liens and Obligations*.  Subject to paragraph 28 below:

(i)      *BofA Prepetition Liens and Obligations*. Pursuant to that certain Promissory Note (the "BofA Note"), dated June 29, 2004, as amended, between CV, as borrower, and Bank of America, N.A. ("BofA"), as lender, as heretofore amended from

time to time, and that certain Loan Agreement (the "BofA Loan Agreement"), dated as of August 4, 2009, between CV and BofA, as heretofore amended from time to time, BofA agreed to make loans to CV (the "BofA Loans"). BofA also has outstanding a $1.5 million letter of credit for the account of Debtors (all amounts owing thereunder, together with all amounts owing under the BofA Note and the BofA Loan Agreement, the "BofA Obligations"). To induce BofA to extend the BofA Loans and as security for the repayment of all amounts due under the BofA Obligations, (i) pursuant to that certain Pledge Agreement (the "BofA Pledge Agreement", and together with the BofA Note, the "BofA Agreement"), dated June 29, 2004, between BofA and CV, CV granted to BofA a lien and security interest (the "BofA Liens") in substantially all of its assets, as more fully described in the BofA Pledge Agreement (the "BofA Collateral"), and (ii) John D. Howard ("JDH", and together with Holding, "LBN") issued a Continuing and Unconditional Guaranty, dated June 29, 2004, and a Continuing and Unconditional Guaranty, dated March 27, 2009 (together, the "JDH Guaranty"), guaranteeing all amounts owed under the BofA Note. As of the date of filing approximately $11,115,000 was owed to BofA in respect of the BofA Loans.

(ii)     *Praesidian Prepetition Liens and Obligations*.  Pursuant to agreements entered into between the Debtors and Praesidian Capital Investors, LP ("Investors"), Praesidian II SPV 1 LP ("SPV 1") and Praesidian II SPV 2, LP ("SPV 2", and together with Investors and SPV 1, "Praesidian," and together with BofA and LNB, the "Prepetition Lenders" and each a "Prepetition Lender"), from time to time (collectively, the "Praesidian Agreements"), Praesidian has loaned amounts to the Debtors from time to time (the "Praesidian Loans") and the obligations under such

agreements (the "Praesidian Obligations") are secured by a lien and security interest (the "Praesidian Liens") in substantially all of the assets of Debtors (the "Praesidian Collateral"). As of the date of filing, approximately $30,626,715.70 was owed to Praesidian in respect of the Praesidian Loans.

(iii) *LBN Prepetition Liens and Obligations.* Pursuant to agreements entered into between the Debtors and LBN (as successor in interest to JDH) from time to time (collectively, the "LBN Agreements", and together with the BofA Agreement and the Praesidian Agreements, the "Prepetition Credit Agreements"), LBN has loaned amounts to or for the benefit of the Debtors from time to time (the "LBN Loans") and the obligations under such agreements (the "LBN Obligations", and together with the BofA Obligations and the Praesidian Obligations, the "Prepetition Obligations") are secured by a lien and security interest (the "LBN Liens", and together with the BofA Liens and the Praesidian Liens, the "Prepetition Liens") in substantially all of the assets of Debtors and by a pledge of the equity interests in all or substantially all of the Debtors ( the "LBN Collateral", and together with the BofA Collateral and the Praesidian Collateral, the "Prepetition Collateral").[1] As of the date of filing, not less than $22,400,000 was owed to LBN in respect of the LBN Loans. In addition, pursuant to a Reimbursement Agreement between JDH and the Debtors dated June 27, 2004, if JDH is obliged to make any payment under the JDH Guaranty, the Debtors must reimburse LBN, and such reimbursement obligation is similarly secured.

---

[1] The LBN Obligations and the Praesidian Obligations are subordinated to the BofA Obligations pursuant to that certain Subordination Agreement, dated on or about March 5, 2009, by Praesidian Capital Investors, L.P. and LBN, in favor of BofA and that certain Subordination Agreement, dated on or about March 5, 2009, by Praesidian II SPV 1, LP and Praesidian II SPV 2, LP, in favor of BofA.

(iv)     Except as provided for in this Final Order, the Prepetition Liens (i) are valid, binding, perfected, enforceable liens on the Prepetition Collateral and, subject to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents and profits thereof, (ii) shall not be subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) shall be subject and subordinate only to (A) Carve Out (as defined below), (B) DIP Liens (as defined below), and (C) adequate protection liens.

(v)     Except as provided for in this Final Order, the Prepetition Obligations (i) constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms, and no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Obligations exists, and (ii) are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(vi)     The Prepetition Lenders perfected their security interests and Prepetition Liens in and on the Prepetition Collateral by, among other methods, the filing of UCC-1 financing statements, instruments filed in federal, state, and county offices, mortgages, and other required documents against the applicable Debtors and such collateral with the proper federal, state, and county offices for the perfection of such security interests and Prepetition Liens, as applicable.

G.     *Prepetition Lenders' Consent*.  Each of the Prepetition Lenders consents to the Debtors' use of the Prepetition Lenders' Cash Collateral and the priming of the Prepetition Liens to the extent and solely on the terms and conditions provided for in this Final Order, and in

accordance with the budget attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>"). The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent.

      H.      *Adequate Protection*.  The Prepetition Lenders are entitled to receive adequate protection on account of their respective interests in the Prepetition Collateral pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral) to the extent provided for in this Final Order, including any diminution resulting from the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and to the extent of any such diminution in value, the "<u>Diminution in Value</u>").  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Lenders will receive (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (ii) interest payments to BofA as set forth more fully in paragraph 14 herein, and (iii) payment of the reasonable fees and disbursements (solely to the extent that such fees and disbursements are incurred in connection with protecting the rights of the Prepetition Lenders under the Prepetition Credit Documents, as applicable) of (A) Shearman & Sterling LLP, counsel to BofA, (B) Morrison Cohen LLP, counsel to Praesidian, and (c) Moses & Singer LLP, counsel to LBN. The Debtors expressly reserve all rights to object to the reasonableness of the fees and disbursements of the Prepetition Lenders. To the extent such fees and disbursements are paid in excess of the amounts determined reasonable by the Court, the application of such excess payments shall be determined by the Court.

I.    *Stipulations and Findings Regarding the Postpetition Financing*.

(i)    *Need for Post-petition Financing and Use of Cash Collateral*.  The DIP Facility is superior to the Debtors' other alternatives, if any, including the use of Cash Collateral alone. The Debtors' need to obtain credit up to the sum of $800,000 (inclusive of amounts advanced in connection with the First Interim Order and the Second Interim Order and not repaid prior hereto) pursuant to the DIP Facility and to use Cash Collateral is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers and customers, to pay their employees, to make utility deposits and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful reorganization. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and use of Cash Collateral.

(ii)    *No Credit Available on More Favorable Terms*.  Given their financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtors have been unable to obtain sufficient unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy

Code; or (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Lender (i) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (ii) superpriority claims with the priorities set forth in paragraph 7, and (iii) the other protections set forth in this Final Order.

(iii)     *Use of Proceeds of the DIP Facility*.  As a condition to the entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the agreement for the use of Cash Collateral, the DIP Lender and Prepetition Lenders require, and the Debtors have agreed that, proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Documents and in accordance with and to the extent set forth in the Budget (as the same may be modified from time to time with the consent of the DIP Lender), consistent with the terms of the DIP Documents and subject to such variances as permitted by the DIP Credit Agreement, solely for (a) working capital and other general corporate purposes to fund the Debtors' operations, (b) permitted payment of costs of administration of the Cases, and (c) payment of such prepetition and postpetition expenses as have been or hereafter are consented to by the DIP Lender, in writing in its sole discretion, and are approved by the Court.

J.     *Good Faith of the DIP Lender*.

(i)     *Willingness to Provide Financing*.  The DIP Lender is willing to provide financing to the Debtors subject to: (a) the entry of the First Interim Order, the Second Interim Order and this Final Order; (b) the DIP Lender's approval of the terms and conditions of the DIP Facility and the DIP Documents and satisfaction of all

conditions precedent in the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Final Order or any other order.

       (ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length. The credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

    K.    *Sections 506(c) and 552(b).*  In light of (i) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out and certain of the adequate

protections liens and claims granted herein; and (ii) the agreement of the Prepetition Lenders to subordinate their adequate protection liens and superpriority claims to the Carve Out and the DIP Lender's liens and superpriority claims solely to the extent provided for herein, and to permit the use of their Cash Collateral for payments made in accordance with the Budget and this Final Order, each of the DIP Lender and the Prepetition Lenders are entitled, upon entry of this Final Order granting such relief, to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.    *Notice*.  Notice of the Final Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the Southern District of New York (the "UST"); (ii) all secured creditors, (iii) the Debtors' consolidated list of 30 largest unsecured creditors and (iv) all parties requesting notice pursuant to Rule 2002 of the Bankruptcy Rules, which constitutes due and sufficient notice thereof pursuant to Rules 2002 and 4001(b) and (c) of the Bankruptcy Rules and S.D.N.Y. LBR 4001-2, and that no other or further notice is necessary for purposes of this Final Order.

Based upon the foregoing stipulations, findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.    Postpetition Financing and Use of Cash Collateral Approved.  The Motion is granted to the extent provided herein, the postpetition financing is authorized and approved on a

final basis, and the use of Cash Collateral is authorized and approved on a final basis, subject to the terms and conditions set forth in this Final Order.

**DIP Facility Authorization**

2.      <u>Authorization of the DIP Financing and DIP Documents</u>.  The DIP Documents are hereby approved on a final basis for the purpose of the loans authorized herein.  The Debtors are expressly and immediately authorized and empowered (i) to execute and deliver the DIP Documents (including authorizing and causing the execution of appropriate documents by the DIP Guarantors) and to incur and to perform the DIP Obligations (to the extent any such DIP Documents have not been executed and delivered and any such DIP Obligations have not been incurred or performed pursuant to authorization of the First Interim Order and Second Interim Order) in accordance with, and subject to, the terms of this Final Order and the DIP Documents; (ii) and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Documents.  The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, the fees and disbursements of the DIP Lender (including the reasonable fees and expenses of the DIP Lender's attorneys and other professionals, indemnification obligations, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute DIP Obligations; <u>provided</u>, <u>however</u>, that such fees and expenses shall only be paid ten (10) business days after reasonably detailed invoices for such fees shall have been submitted to the Debtors, and the Debtors shall promptly provide copies of such invoices to the UST and counsel to the

Creditors' Committee, all to the extent provided in the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with the terms of the DIP Documents.

3.  <u>Authorization to Borrow</u>.  Subject to the terms and conditions set forth in the DIP Documents, the DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized on a final basis to borrow up to an aggregate principal amount of $800,000 (inclusive of amounts advanced in connection with the First Interim Order and Second Interim Order and not repaid prior hereto), which funds shall only be used for purposes permitted and prescribed under the DIP Documents (including, without limitation, as circumscribed by the Budget) and this Final Order.

4.  <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of a Case. Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Lender under the DIP Documents or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents. The DIP Obligations shall be due and payable, without notice or demand

on the earliest to occur of (a) August 2, 2011 (<u>provided</u>, <u>however</u>, that the DIP Obligations will be extended for an additional seven (7) months unless the Prepetition Lenders each agree otherwise); (b) the effective date of any plan of reorganization or liquidation in these Cases; (c) the date on which any of the Cases are converted to a case under chapter 7 of the Bankruptcy Code; (d) the date on which the acceleration of the DIP Facility and the termination of the commitments with respect to the DIP Facility occurs in accordance with the DIP Documents; (e) the date of the closing of the sale of all or substantially all of the Debtors' assets; (f) the date on which all obligations outstanding under the DIP Facility are paid in full and the commitments under the DIP Facility have terminated; or (g) the dismissal of any of the Cases (the earliest of such dates, the "<u>Maturity Date</u>").

5.      <u>DIP Liens and DIP Collateral</u>.  Effective immediately upon the execution of this Final Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code: (a) the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens (the "<u>DIP Liens</u>") on all existing and after acquired real and personal property, and other assets of the Debtors, tangible and intangible, whether now owned by or owing to, or arising in favor of the Debtors, whether owned or consigned by or to, or leased from or to the Debtors (to the full extent of the Debtors' interest therein), and regardless of where located, including, without limitation, the following (collectively, the "<u>DIP Collateral</u>"):[2]  (A) all Collateral (as defined in the DIP Documents) and the proceeds thereof, (B) all avoidance power claims and actions under section 549 of the Bankruptcy Code relating to any post-petition transfer of DIP Collateral and any proceeds thereof, (C) any previously unencumbered assets of any Debtor, and (D) proceeds

and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all tangible or intangible property resulting form the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein; provided, however, the DIP Collateral shall not include any avoidance power claims and actions under chapter 5 of the Bankruptcy Code (except with respect to the claims and action under section 549 as stated above)..

6.      DIP Lien Priority.  The DIP Liens securing the DIP Obligations shall be continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens junior only to (a) the Carve Out, (b) all of the BofA Prepetition Liens, and (c) all adequate protection claims and liens granted to BofA pursuant to this Final Order.  Other than as specifically set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases, including, without limitation, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, and/or upon the dismissal of the Cases. The DIP Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

7.      DIP Superpriority Claim.  The DIP Lender is hereby granted, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases (collectively, the "DIP Superpriority  Claim") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the Carve Out and the adequate protection claims granted to BofA, and otherwise the DIP Superpriority Claims shall have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in the

---

[2]      All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents. All terms not specifically defined in the DIP Documents shall have the meanings ascribed to

Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code and at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.    <u>No Obligation to Extend Credit</u>.  The DIP Lender shall not have any obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such loan under the applicable DIP Documents and this Final Order have been satisfied in full or waived in writing by the DIP Lender.

9.    <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors shall use loans under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Documents and in substantial compliance with the Budget, which sets forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a rolling weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Budget; <u>provided</u>, <u>however</u>, that for any week in the Budget, the amounts for each line item may vary 20% up to a 15% aggregate variance of the total amount provided for any week in the Budget, but as provided for in the DIP Credit Agreement, the failure to comply with such variances shall not constitute an Event of Default under the DIP Credit Agreement.

10.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Lender under the DIP Documents, the Debtors are authorized and directed to afford representatives, agents and/or employees of the DIP Lender reasonable access

---

such terms in Article 8 or 9 of the Uniform Commercial Code.

to the Debtors' premises and their books and records in accordance with the DIP Documents, and are authorized and directed to reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

**Authorization to Use Cash Collateral and for Adequate Protection**

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order and the DIP Documents (including, without limitation, paragraph 9 of this Final Order), the Debtors are authorized on a final basis to use Cash Collateral in accordance with the Budget (or to repay sums borrowed under the DIP Facility) until the earliest to occur of a Maturity Date or the Termination Declaration Date (as defined below); <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined below) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations and to pay expenses critical to the preservation of the Debtors and their estates as agreed to by the DIP Lender and the Prepetition Lenders in their sole discretion.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, the DIP Documents and in accordance with the Budget or otherwise as approved by the Court.

12.     <u>Adequate Protection Liens</u>.

(a)     *Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such interests, the Debtors hereby grant on a final basis to the Prepetition Lenders, continuing valid, binding, enforceable, non-

avoidable and automatically perfected post-petition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

(b)     *Priority of Adequate Protection Liens*.  The Adequate Protection Liens shall be subordinate to the Carve Out and junior to the BofA Prepetition Liens. The Adequate Protection Liens granted to the Prepetition Lenders other than BofA shall be junior to the DIP Liens. The Adequate Protection Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral. Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases, and shall be valid and enforceable against any trustee appointed in the Cases or upon the dismissal of the Cases. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.     Adequate Protection Superpriority Claims.

(a)     *Adequate Protection Superpriority Claims*.  As further adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Lenders are each hereby granted on a final basis as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases (the "Adequate Protection Superpriority Claims").

(b)     Priority of Adequate Protection Superpriority Claims.  The Adequate Protection Superpriority Claims shall be subordinate to the Carve Out. Except as set forth herein,

the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code; provided, however, that the Adequate Protection Superpriority Claims granted to the Prepetition Lenders other than BofA shall be subordinate to the DIP Superpriority Claim.

14.     Adequate Protection Payments and Protections.  As further adequate protection, the Debtors are authorized to and shall provide adequate protection to (i) the Prepetition Lenders in the form of ongoing payment of the reasonable legal fees and expenses (subject to the review period set forth in Paragraph 2 of this Final Order) incurred after the Petition Date, and (ii) BofA in the form of payment of accrued interest at the rate provided for in and pursuant to the terms of the BofA Note and the BofA Loan Agreement.

15.     Section 507(b) Reservation.  Nothing herein shall impair, limit or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Lenders pursuant to this Final Order is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.

16.     Amendment of the DIP Documents.  The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto in accordance with the provisions thereof without notice or a hearing if:  (a) the amendment, modification, or supplement is not material; (b) a copy (which may be provided through electronic mail or facsimile) of the

amendment, modification or supplement is provided to counsel for the Prepetition Lenders, the UST and the Creditors' Committee and consented to by the Prepetition Lenders and the Creditors' Committee; and (c) the amendment, modification or supplement is filed with the Court. If any party entitled to notice of the proposed amendment, modification or supplement does not consent, the Debtors may notice and schedule an emergency hearing on a motion for approval of the proposed amendment, modification or supplement.

### Provisions Common to DIP Financing and Use of Cash Collateral Authorizations

17. <u>Budget Maintenance</u>. The Budget and any modification to, or amendment or update of, the Budget, shall be in form and substance acceptable to and approved by the DIP Lender (in consultation with the Prepetition Lenders) in its sole discretion.

18. <u>Modification of Automatic Stay</u>. The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Lender or the Prepetition Lenders each may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Lender and Prepetition Lenders under the DIP Documents, the DIP Facility and this Final Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Lender and Prepetition Lenders to retain and apply, payments made in accordance with the terms of this Final Order.

19. <u>Perfection of DIP Liens and Adequate Protection Liens</u>. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and

the Adequate Protection Liens without the necessity of filing or recording any financing

statement, mortgage, notice, or other instrument or document which may otherwise be required

under the law or regulation of any jurisdiction or the taking of any other action (including, for the

avoidance of doubt, entering into any deposit account control agreement) to validate or perfect

(in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection

Liens, or to entitle the DIP Lender and the Prepetition Lenders to the priorities granted herein.

Notwithstanding the foregoing, each of the DIP Lender and the Prepetition Lenders is authorized

to file, as it deems necessary or advisable, such financing statements, mortgages, notices and

other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to

otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such

financing statements, mortgages, notices and other documents shall be deemed to have been filed

or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be

necessary or required in order to create, evidence or perfect the DIP Liens and/or the Adequate

Protection Liens. The Debtors are authorized to and shall execute and deliver promptly upon

demand to the DIP Lender and the Prepetition Lender all such financing statements, mortgages,

title insurance policies, notices, instruments, and other documents as the DIP Lender or the

Prepetition Lenders may request. The DIP Lender and the Prepetition Lender may file a

photocopy of this Final Order as a financing statement or notice with any filing or recording

office or with any registry of deeds or similar office, in addition to or in lieu of such financing

statements, mortgages, notices of lien, instrument, or similar document.

     20.    <u>Maintenance of DIP Collateral and Cash Management System</u>.  Until the

indefeasible payment in full in cash of all DIP Obligations, and the termination of the DIP

Lender's obligation to extend credit under the DIP Facility, the Debtors are authorized and

directed to: (a) insure the DIP Collateral as required under the DIP Documents; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Lender and the Prepetition Lenders, or as otherwise agreed to by the DIP Lender, in its sole discretion, or as otherwise required by the DIP Documents or by order of the Court upon appropriate notice.

21.     <u>Disposition of DIP Collateral; Rights of DIP Lender and the Prepetition Lenders</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business without the prior written consent of the DIP Lender and the Prepetition Lenders or otherwise ordered by the Court.

22.     <u>Right to Credit Bid</u>.  Subject to paragraph 28 below, each of the DIP Lender and the Prepetition Lenders shall have the right to credit bid with respect to any sale of assets or equity under either section 363 of the Bankruptcy Code or a plan of reorganization, the amount, (i) with respect to the DIP Lender, such lender advanced under the DIP Facility that is outstanding at the time of the sale, and (ii) with respect to the Prepetition Lenders, such lender's portion of the Prepetition Obligations, which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner. For the avoidance of ambiguity, subject to paragraph 28 below, no future order or plan of reorganization may impair the credit bid rights of the DIP Lender or the Prepetition Lenders.

23.     <u>Postpetition Financing Termination</u>.  On the Maturity Date, (a) all DIP Obligations shall be immediately due and payable, (b) all commitments to extend credit under the DIP Facility will terminate, and (c) all authority to use Cash Collateral shall cease; <u>provided</u>, <u>however</u>, that during the Remedies Notice Period, the Debtors may use Cash Collateral solely as set forth in paragraph 11 hereof.

24.     <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein, including, but not limited to, the failure to comply with any of the terms of this Final Order, shall constitute an event of default (an "<u>Event of Default</u>") under this Final Order, unless waived in writing by the DIP Lender.

25.     <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Lender, in accordance with the terms of the DIP Credit Agreement, shall be entitled to declare (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (b) the termination or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (c) the termination of the DIP Credit Agreement and any other DIP Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations; and/or (d) and, in consultation with the Prepetition Lenders, may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, except as provided in paragraph 11 hereof during the Remedies Notice Period defined below (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>"). The Termination Declaration shall be given by email, facsimile (or other electronic means) to (i) counsel to the Debtors, (ii) counsel to the Prepetition Lenders, (iii) counsel to the Creditors' Committee, and (iv) the UST (the earliest date any such Termination Declaration is received by counsel to the Debtors prior to 5:00 p.m. prevailing eastern time shall be referred to herein as the "<u>Termination Declaration Date</u>"). The DIP Obligations shall be due and payable, without notice or demand, and the ability of the Debtors to use Cash Collateral shall automatically terminate or be reduced or restricted on the Termination Declaration Date, as provided in the applicable Termination Declaration except as provided in paragraph 11 during the Remedies Notice Period. For the

period that is seven (7) Court days after the Termination Declaration Date (the "Remedies Notice Period"), the Debtors shall be entitled, upon appropriate notice to the parties entitled to receive notice of the Termination Declaration, to seek an emergency hearing with the Court. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred or enters an order precluding the exercise of remedies, and subject to the rights, remedies, claims and liens of the Prepetition Lenders as provided for in this Final Order, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Lender shall be permitted to exercise all remedies set forth in the DIP Credit Agreement and the DIP Documents, as applicable, and as otherwise available at law or in equity against the DIP Collateral, as the case may be, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral or any other rights and remedies granted to the DIP Lender with respect thereto pursuant to the DIP Credit Agreement, the DIP Documents, this Final Order or applicable law.

26.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Interim Order.  The DIP Lender has acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the First Interim Hearing, the Second Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability,

enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

27.     Carve Out.

(a)     *Carve Out*.  As used in this Final Order, "Carve Out" means the following expenses: (i) statutory fees payable to the UST pursuant to 28 U.S.C. § 1930(a)(6), including any interest on such fees at the applicable rate that is owed by the Debtors; (ii) subject to the terms and conditions of this Final Order, (x) all fees and disbursements for the Debtors' professionals retained by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) pursuant to section 327 of the Bankruptcy Code, (y) all fees and disbursements for the Creditors' Committee's professionals retained by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) pursuant to sections 328 or 1103 of the Bankruptcy Code (collectively, the "Creditors' Committee's Professionals") up to the sum of $150,000; provided, however, if a plan of reorganization is not confirmed by October 1, 2011 (or October 31, 2011, in the event the Debtors file a plan of reorganization and disclosure statement with respect thereto by June 30, 2011 and such plan is not confirmed by October 1, 2011 as a result of an objection by the Creditors' Committee to such plan that is not sustained by the Court), such carve out shall increase by the sum of $25,000 for the next thirty day period (with any further increase for any additional period to be negotiated by the parties) (the "Committee Professional Carve Out"); and (z) up to the sum of $50,000 for the

fees and expenses of a trustee appointed upon conversion of the case to chapter 7, to the extent allowed or later allowed by order of the Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) under sections 328, 330 and/or 331 of the Bankruptcy Code and any interim compensation procedures order (collectively, the "Allowed Professional Fees"), but solely to the extent such Allowed Professional Fees are within the corresponding amounts set forth in the Budget and the Creditors' Committee's Professionals shall waive any claim for fees and expenses that exceed the Committee Professional Carve Out (the "Excess Fees and Expenses") against encumbered assets of the Debtors' estates and agree in any event that they shall not require the Excess Fees and Expenses to be paid as an administrative expense as a condition to confirmation of a plan of reorganization; provided, however, that, upon an Event of Default under the DIP Documents, the amount of the Carve Out shall not exceed $50,000 plus the amount of the professional fees and expenses incurred in accordance with the Budget prior to such Event of Default.

(b)    *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees*.  The DIP Lender and the Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professional or chapter 7 trustee incurred in connection with the Cases. Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Lender or the Prepetition Lenders in any way to pay compensation to or to reimburse expenses of any Case Professional or chapter 7 trustee, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out if actual Allowed Professional Fees are higher in fact than reflected in the Budget or estimated fees and disbursements of any Case Professional or chapter 7 trustee reflected in the Budget; or (iii) as consent to the allowance of any professional fees or expenses

of any Case Professional or chapter 7 trustee. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code and applicable law. The DIP Lender's and the Prepetition Lenders' liens and claims granted pursuant to this Final Order shall, however, be subject and subordinate to the Carve Out as set forth in this Final Order.

28. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. Any party in interest, including the Creditors' Committee, granted standing (other than the Debtors and their successors, with the exception of a chapter 7 or 11 trustee appointed during the Challenge Period (as defined below)) by the Court, may seek to avoid, object to or otherwise challenge the findings or Debtors' stipulations in this Final Order regarding (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition Lenders or (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations. A party must commence, as appropriate, a contested matter or adversary proceeding raising such claim, objection, defense, or other challenge, including, without limitation, any claim against any of the Prepetition Lenders in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations or the Prepetition Liens (each, a "<u>Challenge</u>") within ninety (90) calendar days following the date of entry of the Second Interim Order (the "<u>Challenge Period</u>"). The Challenge Period may only be extended with the written consent of the applicable Prepetition Lender. Upon the expiration of the Challenge Period (the "<u>Challenge Period Termination Date</u>"), without the filing of a Challenge (or if any such Challenge is filed and overruled): (A) any and all such Challenges by any party (including, without limitation, any chapter 11 trustee and/or any examiner or other estate representative

appointed or elected in these Cases, shall be deemed to be forever waived and barred, and (B) all of the Debtors' stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each of the Prepetition Lender's, claims, liens, and interests as set forth herein shall be of full force and effect and forever binding upon all the Debtors' estates and all creditors, interest holders, and other parties in interest in these Cases. To the extent that a Challenge is timely filed but does not expressly challenge all of the Debtors' stipulations, or to the extent any creditor, interest holder and other party interest does not file any timely Challenge, all such unchallenged Debtors' stipulations shall be of full force and effect and forever binding upon all the Debtors' estates and all creditors, interest holders, and other parties in interest in these Cases, notwithstanding any timely-filed Challenge.

29. <u>Rights of Recoupment or Setoff</u>. Notwithstanding anything to the contrary in this Final Order, nothing in this Final Order shall (a) compromise, modify or affect the ability of any party in interest to assert a right of recoupment or setoff with respect to amounts allegedly owed to the Debtors, or (b) create any right of recoupment or setoff with respect to amounts allegedly owed to the Debtors.

30. <u>Section 506(c) Claims</u>. Upon entry of this Final Order granting such relief and subject to the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Lender or the Prepetition Lenders or any of their respective claims, the DIP Collateral or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the affected DIP Lender or Prepetition Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such lender.

31.     No Marshaling/Applications of Proceeds.  The DIP Lender and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

32.     Section 552(b).  The DIP Lender and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or any Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

33.     Discharge Waiver.  The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of sections 524 and/or 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or such sale, of all DIP Obligations.

34.     Rights Preserved.

(a)     Notwithstanding anything herein to the contrary, in the case of an Event of Default under the DIP Credit Agreement, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the DIP Lender's or the Prepetition Lenders' right under the Bankruptcy Code or under non-bankruptcy law including, but not limited to, the right (i) to seek any other or supplemental relief in respect of any Debtors; (ii) to request modification of the automatic stay of section 362 of the Bankruptcy Code; (iii) to request

dismissal of any of the Cases, conversion of any of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iv) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

(b)     Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender and the Prepetition Lenders are preserved.

35.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Lender or the Prepetition Lenders to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the DIP Documents, the Prepetition Credit Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Lender or any Prepetition Lender.

36.     <u>Binding Effect of Final Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, the Prepetition Lenders, all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, or upon dismissal of any of the Cases.

37.     <u>No Modification of this Final Order</u>.  Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) (with full cash collateral provided for any contingent obligation (other than any indemnification obligations) that have not yet matured) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek

or consent to, directly or indirectly, without the prior written consent of the DIP Lender: (i) any modification, stay, vacatur or amendment to this Final Order (and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender); (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Cases equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out; or (iii) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents.

38. <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Documents, the First Interim Order, the Second Interim Order and this Final Order, the provisions of this Final Order shall govern and control.

39. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases; (d) discharging the Debtors; or (e) pursuant to which this Court abstains from hearing any of the Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Lender and the Prepetition Lenders pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in any of the Cases, or following dismissal of any of the Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility are terminated. The

terms and provisions of the DIP Credit Agreement concerning the indemnification of the DIP Lender shall continue in any of the Cases, following dismissal of any of the Cases, and following termination of the DIP Documents and/or the repayment of the DIP Obligations.

40. <u>Effect of this Final Order</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

41. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: June 1, 2011
      New York, New York


                */s/ Allan L. Gropper*
                UNITED STATES BANKRUPTCY JUDGE