Jonathan L. Flaxer, Esq.
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300

David B. Shemano, Esq.
PEITZMAN, WEG & KEMPINSKY LLP
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
(310) 552-3100

Counsel for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLUB VENTURES INVESTMENTS LLC, *et al.*,[1] | ) | Case No. 11-10891 (ALG) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |

———————————————————————————

## DEBTORS' SECOND AMENDED JOINT PLAN
## OF REORGANIZATION DATED SEPTEMBER 20, 2011

### INTRODUCTION

    The above-captioned debtors (the "Debtors") propose the following joint plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement, filed contemporaneously herewith, for a discussion of (i) certain information relating to the Debtors, (ii) a summary and analysis of this Plan, and (iii) certain matters related to the confirmation and the consummation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of title 11 of the United States Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, subject to Article 11.5 herein, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan.

---

[1] The Debtors in these cases are: Club Ventures Investments LLC (Case No. 11-10891); Club Ventures II, LLC (Case No. 11-10892); CV 2, LLC (Case No. 11-10894); CV II Gym, LLC (Case No. 11-10893); Club Ventures III, L.L.C. (Case No. 11-10896); CV 3, LLC (Case No. 11-10895); CV III Gym, LLC (Case No. 11-10897); Club Ventures IV, LLC (Case No. 11-10900); CV 4 Leasing, LLC (Case No. 11-10898); CV IV Gym, LLC (Case No. 11-10899); Club Ventures VI, LLC (Case No. 11-10901); CV VI, LLC (Case No. 11-10902); CV VII Gym, LLC (Case No. 11-10903); Club Ventures VIII, LLC (Case No. 11-10905); CV VIII Gym, LLC (Case No. 11-10904); Club Ventures X, LLC (No. 11-10906); CV X Gym, LLC (Case No. 11-10907); and DB 85 Gym Corp. (Case No. 11-10908).

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

***Defined Terms***.  As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1** ***Additional Debtor*** means any affiliate or other related party of a Debtor that files a chapter 11 petition at any time prior to the Confirmation Date and whose chapter 11 case is jointly administered with the Chapter 11 Cases.

**1.2** ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 503(b) or 507(b) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; (c) claims under section 503(b)(9) of the Bankruptcy Code, and (d) claims, if any, under the DIP Facility, DIP/Cash Collateral Order, or any engagement or fee letter for the Exit Facility.

**1.3** ***Allowed*** means, with respect to any Claim, such Claim or any portion thereof that the Debtors have assented to the validity of or that has been (a) allowed by a Final Order of the Bankruptcy Court, (b) allowed pursuant to the terms of this Plan, (c) allowed by agreement between the Holder of such Claim and the Debtors or Reorganized Debtors, or (d) with respect to any Unimpaired Claim, determined, resolved or adjudicated in any venue in which such Claim could have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided, however*, that, notwithstanding anything herein to the contrary, by treating an Unimpaired Claim as an "Allowed Claim" the Debtors do not waive their rights to contest the amount and validity of such Unimpaired Claim to the extent it is disputed, contingent or unliquidated, in the manner and venue in which such Unimpaired Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

**1.4** ***Allowed Amount*** means the Allowed amount of an Allowed Claim.

**1.5** ***Amended CVI Operating Agreement*** means the amended operating agreement for Reorganized CVI attached as Exhibit I to the Disclosure Statement.

**1.6** ***Astor Place Note*** means the non-interest bearing note executed by the Reorganized Debtor in favor of LBN in the principal amount of $500,000, providing for payment of such principal amount from the first monies released to the Reorganized Debtors by the landlord under the Reorganized Debtors' lease for 4-20 Astor Place, New York, NY.  The terms and conditions of the Astor Place Note are governed by the Securities Purchase Agreement.  A copy of the Astor Place Note is attached as an exhibit to the Securities Purchase Agreement.

**1.7** ***Avoidance Action*** means a claim or cause of action of an Estate arising out of or maintainable pursuant to sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b)

or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.8** *Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Cases.

**1.9** *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York, or any other court with jurisdiction over the Chapter 11 Cases.

**1.10** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Cases.

**1.11** *Berkowitz* means Mark Berkowitz.

**1.12** *Berkowitz Claims* means collectively the Berkowitz Wage Claim and Berkowitz Membership Claim.

**1.13** *Berkowitz Litigation* means the litigation pending in the Supreme Court of the State of New York, County of New York, captioned *Mark Berkowitz v. Club Ventures Investments LLC d/b/a David Barton Gym, David Barton and John Howard*, Index No. 602824/07.

**1.14** *Berkowitz Membership Claim* means an Interest in or Claim against the Debtors asserted by Berkowitz arising from or related to his alleged entitlement to Class B Interests as alleged in the underlying complaint filed in the Berkowitz Litigation.

**1.15** *Berkowitz Wage Claim* means a Claim against the Debtors asserted by Berkowitz for wages and bonuses under his "Employment Agreement" as defined in the underlying complaint filed in the Berkowitz Litigation.

**1.16** *BofA* means the Bank of America, N.A.

**1.17** *BofA Documentation* means, collectively, all underlying loan agreements, promissory notes, amendments thereto, and any other documentation governing BofA's rights and remedies against the Debtors and evidencing the BofA Secured Claim.

**1.18** *BofA Secured Claim* means the Claim asserted by BofA against CVI in the approximate amount of $11,115,000 and secured by substantially all of the assets of CVI.

**1.19** *Business Day* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.20** *Cash* means legal tender of the United States of America.

**1.21** *Chapter 11 Case(s)* means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

**1.22** *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

**1.23** *Class A Interest* means a Class A Membership Unit defined in the CVI Operating Agreement.

**1.24** *Class B Interest* means a Class B Membership Unit defined in the CVI Operating Agreement.

**1.25** *Class C Interest* means a Class C Membership Unit defined in the CVI Operating Agreement.

**1.26** *Class* means a category of Claims or Interests, as described in Article III hereof.

**1.27** *Confirmation* means the confirmation of this Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

**1.28** *Confirmation Date* means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.29** *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.30** *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.31** *Convenience Claim* means a Claim against a Debtor that is for $250 or less or the Holder of a Claim for more than $250 that elects to reduce its Claim to $250.

**1.32** *Creditors' Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.33** *CVI* means Club Ventures Investments LLC.

**1.34** *CVI Operating Agreement* means the Amended and Restated Limited Liability Company Agreement dated as of March 24, 2009, attached as Exhibit A to the Disclosure Statement.

**1.35** *Debtors* means the following debtors and debtors in possession in the Chapter 11 Cases: Club Ventures Investments LLC, Club Ventures II, LLC; CV 2, LLC; CV II Gym, LLC; Club Ventures III, L.L.C.; CV 3, LLC; CV III Gym, LLC; Club Ventures IV, LLC; CV 4 Leasing, LLC; CV IV Gym, LLC; Club Ventures VI, LLC; CV VI, LLC; CV VII Gym, LLC; Club Ventures VIII, LLC; CV VIII Gym, LLC; Club Ventures X, LLC; CV X Gym, LLC; and DB 85 Gym Corp.

**1.36** *DIP Facility* means the debtor in possession financing facility provided to the Debtors by LBN.

**1.37** *DIP Facility Claim* means any Administrative Claim asserted by BofA, LBN or Praesidian arising from or related to the DIP Facility.

**1.38** *DIP/Cash Collateral Order* means the final order of the Bankruptcy Court entered on June 1, 2011 (as amended, supplemented or otherwise modified), approving the DIP Facility and the Debtors' use of cash collateral.

**1.39** *Disclosure Statement* means the disclosure statement filed contemporaneously herewith (including all exhibits and schedules thereto) relating to this Plan, as amended, modified or supplemented from time to time.

**1.40** *Disputed Claim* means (a) a Claim as to which the Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtors, the Reorganized Debtors, or other party-in-interest in accordance with applicable law, which objection has not been withdrawn or

determined by a Final Order, (b) a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) a Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, or (d) a Claim prior to it having become an Allowed Claim.

**1.41** *Effective Date* means a Business Day on or after the Confirmation Date specified by the Debtors on which (a) no stay of the Confirmation Order is in effect and (b) the conditions to effectiveness set forth in Article 8.2 hereof have been satisfied or waived.

**1.42** *Estate(s)* means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

**1.43** *Exculpated Parties* means (a) the Debtors, (b) any affiliate of the Debtors, (c) the Creditors' Committee and its members (in their capacity as such), (d), the Restructuring Professionals, (e) Praesidian, (f) LBN, (g) JDH, and (h) the present directors, officers, managers, employees or legal advisors of (a) through (g) (in their capacity as such).

**1.44** *Executory Contract* means an executory contract within the meaning of section 365 of the Bankruptcy Code to which any of the Debtors is a party.

**1.45** *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified or supplemented from time to time.

**1.46** *Exit Facility* means a financing facility to be provided to the Reorganized Debtors on the Effective Date by LBN.

**1.47** *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal, that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

**1.48** *General Unsecured Claim* means a Claim against a Debtor that is not an Administrative Claim, BofA Secured Claim, Convenience Claim, Insured Claim, LBN Secured Claim, Member Claim, Non-Tax Priority Claim, Other Secured Claim, Praesidian Secured Claim, or Priority Tax Claim.

**1.49** *General Unsecured Claim Distribution Amount* means the amount equal to $150,000 minus the amount of Cash necessary to satisfy all Allowed Convenience Claims.

**1.50** *Holder* means a holder of a Claim or Interest, as applicable, or such holder's designee.

**1.51** *Impaired* means, when used in reference to a Claim, a Claim that is in a class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.52** *Insured Claim* means a Claim against a Debtor that is covered by insurance or an indemnity policy, agreement, bond or right maintained by or for the benefit of such Debtor, but

only to the extent of coverage or liability under the insurance or indemnity policy, agreement, bond or right.

**1.53** *Intercompany Claim* means (a) any account reflecting intercompany book entries by one Debtor with respect to any other Debtor or any non-Debtor affiliate that is a direct or indirect wholly owned subsidiary of a Debtor or (b) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor or any non-Debtor affiliate that is a direct or indirect wholly owned subsidiary of a Debtor.

**1.54** *Interest* means the legal, equitable, contractual (including any contractual right to acquire equity in a Debtor contingent upon future events, such as an initial public offering) and other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and any option, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor, including membership interests in limited liability companies regardless of whether such membership interests have any voting rights under the applicable operating agreement.

**1.55** *JDH* means John D. Howard.

**1.56** *Lien* means a lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.57** *LBN* means LBN Holdings LLC.

**1.58** *LBN Secured Claim* means the collective contingent and noncontingent Claims against the Debtors asserted by LBN in the noncontingent amount of not less than $22,418,294.61, and the contingent amount of not less than $13,202,431.16.

**1.59** *LBN Notes and Reimbursement Obligation* means (a) the promissory note executed by the Reorganized Debtors in favor of LBN in the aggregate amount of $10,985,000, (b) the Astor Place Note, and (c) the agreement of the Reorganized Debtors to reimburse LBN for any amounts paid by LBN or its predecessor on account of certain prepetition guarantees executed by LBN or its predecessor for the benefit of the Debtors, all of which obligations are secured by substantially all of the Reorganized Debtors' assets, which obligations and security interest shall be subordinate in payment right and lien priority to the BofA Secured Claim. The terms and conditions of items (a) through (c) above are governed by the Securities Purchase Agreement. Copies of the promissory note and Astor Place Note are attached as exhibits to the Securities Purchase Agreement.

**1.60** *Member Claim* means a Claim against a Debtor based upon a contract with the Debtor for use of and access to the Debtor's fitness centers for personal or group training.

**1.61** *Meridian* means Meridian Sports Club California, LLC

**1.62** *Meridian Management Agreement* means the management agreement between Meridian and the Debtors, dated as of December 1, 2010, attached as Exhibit B to the Disclosure Statement.

**1.63** *New Membership Interest* means a membership interest in Reorganized CVI which membership interest shall be subject to the Amended CVI Operating Agreement.

**1.64** *Non-Tax Priority Claim* means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.65** *Other Secured Claim* means a Secured Claim that is not a BofA Secured Claim, Praesidian Secured Claim, or LBN Secured Claim.

**1.66** *Person* means a "person" as defined in section 101(41) of the Bankruptcy Code.

**1.67** *Petition Date* means, with respect to a Debtor or Additional Debtor, the date on which such Debtor or Additional Debtor filed its petition for relief commencing its Chapter 11 Case.

**1.68** *Plan* means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be amended, modified or supplemented from time to time with the consent of Praesidian and LBN.

**1.69** *Praesidian* means collectively Praesidian Capital Investors, LP, Praesidian II SPV 1 LP, and Praesidian II SPV 2, LP.

**1.70** *Praesidian Secured Claim* means the collective Claims against the Debtors asserted by Praesidian in the approximate amount of $30,626,715.70 and secured by substantially all of the assets of the Debtors.

**1.71** *Praesidian Notes* means the promissory notes executed by the Reorganized Debtors in favor of Praesidian in the aggregate amount of $5,000,000, secured by substantially all of the Reorganized Debtors' assets, which notes and security interest shall be subordinate in payment right and lien priority to the BofA Secured Claim. The terms and conditions of the Praesidian Notes are governed by the Securities Purchase Agreement. Copies of the Praesidian Notes are attached as an exhibit to the Securities Purchase Agreement.

**1.72** *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i), 507(a)(8), or 1129(a)(9)(D) of the Bankruptcy Code.

**1.73** *Professional* means (a) a professional employed in the Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code or otherwise, and (b) a professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.74** *Professional Fee Claim* means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

**1.75** *Pro Rata* means the proportionate amount required to make the ratio of Cash distributed on account of an Allowed Claim or reserved on account of a Disputed Claim in a particular Class to the amount of such Allowed Claim or Disputed Claim in that Class equal to the ratio of all Cash distributed or reserved on account of all Allowed Claims and Disputed Claims in that Class to the amount of all Allowed Claims and Disputed Claims in that Class.

**1.76** *Reinstated* means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave the class including such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive

accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such holder of a Claim on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions, change of control or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured to achieve reinstatement.

**1.77** ***Released Parties*** means (a) Praesidian, (b) LBN and (c) JDH, and (d) the present directors, officers, managers, employees or legal advisors of (a) through (c) (in their capacity as such).

**1.78** ***Reorganized*** means, with respect to a Debtor, the successor to such Debtor on and after the Effective Date.

**1.79** ***Restructuring Professionals*** means (a) Peitzman, Weg & Kempinsky LLP, co-bankruptcy counsel to the Debtors; (b) Golenbock Eiseman Assor Bell & Peskoe LLP, co-bankruptcy counsel to the Debtors; (c) FocalPoint Securities, LLC, financial advisors to the Debtors; (d) Klestadt & Winters, LLP, counsel to the Creditors' Committee; and (e) FTI Consulting, Inc., financial advisors to the Creditors' Committee.

**1.80** ***Retained Actions*** means all claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor, any Debtor's Estate, or any Reorganized Debtor may hold against any Person, including: (a) claims and causes of action brought prior to the Effective Date, (b) claims and causes of action against any Person for failure to pay for products or services provided or rendered by any of the Debtors or Reorganized Debtors, (c) claims and causes of action relating to enforcement of any of the Debtors' or Reorganized Debtors' intellectual property rights, including patents, copyrights and trademarks, (d) claims and causes of action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including claim overpayments and tax refunds, and (e) all Avoidance Actions; *provided*, *however*, that Retained Actions shall not include those claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, released under Article IX herein.

**1.81** ***Secured Claim*** means a Claim that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

**1.82**    *Securities Purchase Agreement* means the agreement among Praesidian, LBN and the Reorganized Debtors, dated as of the Effective Date, attached as Exhibit H to the Disclosure Statement.

**1.83**    *Series A Preferred Interest* means a Series A Preferred Membership Unit defined in the CVI Operating Agreement.

**1.84**    *Series B Preferred Interest* means a Series B Preferred Membership Unit defined in the CVI Operating Agreement.

**1.85**    *Subordinated Claims* means Claims subject to subordination under section 510(b) of the Bankruptcy Code.

**1.86**    *Subsidiary* of any Person means (a) a corporation more than 50% of the combined voting power of the outstanding voting stock of which is owned, directly or indirectly, by such Person or by one of more other Subsidiaries of such Person or by such Person and one or more other Subsidiaries thereof; (b) a partnership of which such Person, or one or more other Subsidiaries of such Person or such Person and one or more other Subsidiaries thereof, directly or indirectly, is the general partner and has the power to direct the policies, management and affairs of such partnership; (c) a limited liability company of which such Person or one or more other Subsidiaries of such Person or such Person and one or more other Subsidiaries thereof, directly or indirectly, is the managing member and has the power to direct the policies, management and affairs of such company; or (d) any other Person (other than a corporation, partnership or limited liability company) in which such Person, or one or more other Subsidiaries of such Person or such Person and one or more other Subsidiaries thereof, directly or indirectly, has at least a majority ownership and has the power to direct the policies management and affairs thereof.  For the purposes of this definition, "voting power" shall mean the right to elect a majority of the board of directors of such corporation.

**1.87**    *Subsidiary Debtor* means each of the Debtors other than CVI.

**1.88**    *Unclassified Claims* means Administrative Claims and Priority Tax Claims.

**1.89**    *Unexpired Lease* means an unexpired lease within the meaning of section 365 of the Bankruptcy Code to which any of the Debtors is a party.

**1.90**    *Unimpaired* means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.91**    *U.S. Trustee Fees* means all fees and charges assessed against the Estates under Section 1930 of title 28 of the United States Code.

***Rules Of Interpretation And Computation Of Time***.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions with any modifications subject to the consent of the Debtors, Praesidian, and LBN; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that

entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits*. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than the Confirmation Date. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtors. Upon their filing, the Exhibits may be inspected (i) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (ii) on the Bankruptcy Court's website at http://www.nysb.uscourts.gov (registration required). The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

# ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**2.1** *Statutory Fees*. On the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, including, without limitation, any U.S. Trustee Fees and any applicable interest thereon incurred pursuant to 28 U.S.C. § 1930(a)(6), as determined by the Bankruptcy Court at the Confirmation Hearing, to the extent not previously paid by the Debtors, shall be paid in Cash in full. The Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date. Following Confirmation, the Reorganized Debtors will file with the Bankruptcy Court and serve on the United States Trustee quarterly financial reports regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) that the Chapter 11 Cases remain open.

**2.2** *Administrative Claims*. On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim. Notwithstanding the foregoing, (y) any Allowed Administrative Claim based on a liability incurred by a Debtor in the ordinary course of business during the Chapter 11

Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Claim and the Debtors or the Reorganized Debtors.

2.3     ***Deadline for Filing Administrative Claims***.  By separate Order, the Bankruptcy Court has established the following deadline for filing Administrative Claims:  Other than Holders of (a) Administrative Claims for U.S. Trustee Fees and any applicable interest thereon, (b) Professional Fee Claims, (c) Administrative Claims that were Allowed on or before the Effective Date, (d) Administrative Claims incurred and payable in the ordinary course of the Debtors' business, (e) DIP Facility Claims, and (f) Administrative Claims held by current officers, directors, managers or employees for indemnification, contribution, or advancement of expenses pursuant to (1) an operating agreement or similar organizational document, or (2) agreement approved by the Bankruptcy Court, all Holders of Administrative Claims shall file with the Bankruptcy Court and serve on the Reorganized Debtors proof of any unpaid Administrative Claim on or before the 30th day following the Effective Date.  Such proof must include all supporting documentation for such Administrative Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

2.4     ***Priority Tax Claims***.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the sole discretion of the Debtors, (i) Cash equal to the unpaid portion of such Holder's Allowed Priority Tax Claim, (ii) treatment in any other manner such that such Holder's Allowed Priority Tax Claim shall be paid in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code over a period not ending later than five years from the Petition Date, or (iii) such other treatment as to which the Debtors or the Reorganized Debtors and such Holder shall have agreed upon in writing.

2.5     ***Professional Fee Claims***.  Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Cases prior to the Effective Date shall file with the Bankruptcy Court and serve on the Reorganized Debtors an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases on or before the 60th day following the Effective Date.  **FAILURE TO FILE AND SERVE SUCH PROFESSIONAL FEE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE PROFESSIONAL FEE CLAIM BEING FOREVER BARRED AND DISCHARGED**.  Without limiting the foregoing, the Reorganized Debtors may pay the charges incurred by the Reorganized Debtors on and after the Effective Date for any Professional's fees, disbursements, expenses or related support services, without application to or approval by the Bankruptcy Court.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1** ***Joint Plan for all Debtors***. This Plan is a single plan of reorganization for the jointly administered Chapter 11 Cases. Solely for the purposes of voting, confirmation, and making distributions to the holders of Allowed General Unsecured Claims: (a) all General Unsecured Claims against the Debtors are placed in a single Class for the purpose of voting on the Plan, and (b) any General Unsecured Claims against multiple Debtors based upon one underlying obligation, including Claims based on joint and several liability, contribution, indemnity, subrogation, reimbursement, surety, guaranty, co-maker and similar concepts, shall be treated as a single Claim. Such treatment of General Unsecured Claims for Plan purposes shall not affect, without limitation: (x) the legal and corporate structure of the Reorganized Debtors, (y) any obligations under any leases or contracts assumed in this Plan or otherwise after the Petition Date, or (z) the obligation of each Reorganized Debtor to pay all U.S. Trustee Fees on all disbursements as required by the Bankruptcy Code and Guidelines of the U.S. Trustee.

**3.2** Summary of Classes.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative and Priority Tax Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth in Article II of this Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| Class | Impaired/Unimpaired; Entitlement To Vote |
|---|---|
| Class 1 - Non-Tax Priority Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 2 – BofA Secured Claim | Impaired – Entitled to vote |
| Class 3 – LBN Secured Claim | Impaired – Entitled to vote |
| Class 4 – Praesidian Secured Claim | Impaired – Entitled to vote |
| Class 5 – Other Secured Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 6 – Member Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |

| Class | Impaired/Unimpaired; Entitlement To Vote |
|---|---|
| Class 7 – Convenience Claims | Impaired – Entitled to vote |
| Class 8 – General Unsecured Claims | Impaired – Entitled to vote |
| Class 9 – Insured Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 10 – Subordinated Claims | Impaired – Deemed to have rejected this Plan and not entitled to vote |
| Class 11 – Interests in Subsidiary Debtors | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 12 – Series B Preferred Interests in CVI | Impaired – Deemed to have rejected this Plan and not entitled to vote |
| Class 13 – Series A Preferred Interests in CVI | Impaired – Deemed to have rejected this Plan and not entitled to vote |
| Class 14 – Class C Interests in CVI | Impaired – Deemed to have rejected this Plan and not entitled to vote |
| Class 15 – Class B Interests in CVI | Impaired – Deemed to have rejected this Plan and not entitled to vote |
| Class 16 – Class A Interests in CVI | Impaired – Deemed to have rejected this Plan and not entitled to vote |

**3.3**     Treatment of Classes.

*Class 1 – Non-Tax Priority Claims*

> *Claims In Class:*  All Non-Tax Priority Claims against any of the Debtors.

> *Treatment*:  Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on, or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.

*Voting:* Class 1 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject this Plan.

*Class 2 – BofA Secured Claim*

*Claims In Class:* The BofA Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the BofA Secured Claim shall be Reinstated; *provided, however*, that notwithstanding anything to the contrary in the BofA Documentation, the date by which CVI is required to repay all outstanding principal, interest and other charges outstanding shall be extended to September 15, 2012, and BofA shall have no right to declare a default and exercise rights and remedies based upon CVI's failure to repay all outstanding principal, interest and other charges outstanding prior to September 15, 2012, provided that CVI timely makes monthly interest payments as required under the BofA Documentation and does not otherwise default under the BofA Documentation.

*Voting:* Class 2 is Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holder of the BofA Secured Claim is entitled to vote to accept or reject this Plan.

*Class 3 – LBN Secured Claim*

*Claims In Class:* The LBN Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the Holder of the LBN Secured Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, the LBN Secured Claim: (1) the LBN Notes and Reimbursement Obligation, and (2) New Membership Interests as set forth in the Amended CVI Operating Agreement; provided.

*Voting:* Class 3 is Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holder of the LBN Secured Claim is entitled to vote to accept or reject this Plan.

*Class 4 – Praesidian Secured Claim*

*Claims In Class:* The Praesidian Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the Holders of the Praesidian Secured Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, the Praesidian Secured Claim: (1) the Praesidian Notes, and (2) New Membership Interests as set forth in the Amended CVI Operating Agreement.

*Voting:*   Class 4 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, the Holders of the Praesidian Secured Claim are entitled to vote to accept or reject this Plan.

### Class 5 – Other Secured Claims

*Claims In Class:*   All Other Secured Claims against any of the Debtors.

*Treatment:*   On the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Other Secured Claim shall, at the option of the Debtors, be entitled to the treatment set forth below in option A, B, C, or D.  The Debtors and the Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

Option A:  Allowed Other Secured Claims with respect to which the applicable Debtor elects option A shall be Reinstated.  The failure of the Debtors to file an objection, prior to the Effective Date, with respect to any Other Secured Claim that is Reinstated hereunder shall be without prejudice to the rights of the Reorganized Debtors to contest or otherwise defend against such Claim in an appropriate forum when and if such Claim is sought to be enforced.  Any cure amount that the Debtors may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such Reinstated Other Secured Claim shall be paid on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Other Secured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

Option B:  Allowed Other Secured Claims with respect to which the applicable Debtor elects option B shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, (c) the date on which such Other Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

Option C:  Allowed Other Secured Claims with respect to which the applicable Debtor elects option C shall be satisfied by the surrender to the Holder of the Claim of the collateral securing the applicable Other Secured Claim.

Option D:  Allowed Other Secured Claims with respect to which the applicable Debtor elects option D shall be satisfied in accordance with such other terms and conditions as may be agreed upon by the applicable Debtor or Reorganized Debtor and the Holder of such Allowed Secured Claim.

The Debtors shall be deemed to have elected option A with respect to all Allowed Other Secured Claims except those with respect to which the Debtors elect another option in writing and filed not later than five (5) days prior to the Confirmation Hearing.

*Voting:*  Class 5 is an Unimpaired Class, and the Holders of Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

## Class 6 – Member Claims

*Claims In Class:* All Member Claims against any of the Debtors.

*Treatment:*   On the Effective Date, Holders of Member Claims shall have such Claims Reinstated.

*Voting*:  Class 6 is an Unimpaired Class, and the Holders of Member Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Member Claims are not entitled to vote to accept or reject this Plan.

## Class 7 – Convenience Claims

*Claims In Class:* All Convenience Claims.

*Treatment:*  Holders of Convenience Claims shall be paid in Cash, in full, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Convenience Claim becomes an Allowed Convenience Claim, (c) the date on which such Convenience Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.  No interest will be paid on Allowed Convenience Claims.

*Voting*:  Class 7 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of a Convenience Claim is entitled to vote to accept or reject this Plan.

## Class 8 – General Unsecured Claims

*Claims In Class:*  All General Unsecured Claims against any of the Debtors, including the Berkowitz Wage Claim.

*Treatment*:  On the latest of (a) the Effective Date, (b) the date on which such General Unsecured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between the Debtors or Reorganized Debtors and the Holder of such General Unsecured Claim, or, in each case, as soon thereafter as practicable, each Holder of an Allowed General Unsecured Claim shall receive a

Cash payment equal to its Pro Rata share of the General Unsecured Claim Distribution Amount, in full and final satisfaction of such Claim.

*Voting*: Class 8 is Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holders of General Unsecured Claims are entitled to vote to accept or reject this Plan.

*Class 9 – Insured Claims*

*Claims In Class:* All Insured Claims against any of the Debtors.

*Treatment*: On the Effective Date, all Insured Claims shall be Reinstated.

*Voting*: Class 9 is an Unimpaired Class, and the Holders of Insured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Insured Claims are not entitled to vote to accept or reject this Plan.

*Class 10 – Subordinated Claims*

*Claims In Class*: All Subordinated Claims, including the Berkowitz Membership Claim.

*Treatment:* Holders of Subordinated Claims shall not receive or retain any Cash or other property under the Plan on account of the Subordinated Claims.

*Voting:* Class 10 is Impaired, and the Holders of Subordinated Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Subordinated Claims are not entitled to vote to accept or reject this Plan.

*Class 11 – Interests in the Subsidiary Debtors*

*Interests In Class:* All Interests in the Subsidiary Debtors.

*Treatment:* Holders of Interests in the Subsidiary Debtors shall have such Interests Reinstated on the Effective Date.

*Voting:* Class 11 is an Unimpaired Class, and the Holders of Interests in the Subsidiary Debtors are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Interests in the Subsidiary Debtors are not entitled to vote to accept or reject this Plan.

*Class 12 – Series B Preferred Interests in CVI*

> *Claims In Class*: All Series B Preferred Interests in CVI.

> *Treatment:* All Series B Preferred Interests shall be cancelled and Holders of Series B Preferred Interests shall not receive or retain any Cash or other property under the Plan on account of the Series B Preferred Interests.

> *Voting:* Class 12 is Impaired, and the Holders of Series B Preferred Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Series B Preferred Interests are not entitled to vote to accept or reject this Plan.

*Class 13 – Series A Preferred Interests in CVI*

> *Claims In Class*: All Series A Preferred Interests in CVI.

> *Treatment:* All Series A Preferred Interests shall be cancelled and Holders of Series A Preferred Interests shall not receive or retain any Cash or other property under the Plan on account of the Series A Preferred Interests.

> *Voting:* Class 13 is Impaired, and the Holders of Series A Preferred Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Series A Preferred Interests are not entitled to vote to accept or reject this Plan.

*Class 14 – Class C Interests in CVI*

> *Claims In Class*: All Class C Interests in CVI.

> *Treatment:* All Class C Interests shall be cancelled and Holders of Class C Interests shall not receive or retain any Cash or other property under the Plan on account of the Class C Interests.

> *Voting:* Class 14 is Impaired, and the Holders of Class C Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Class C Interests are not entitled to vote to accept or reject this Plan.

*Class 15 – Class B Interests in CVI*

> *Claims In Class*: All Class B Interests in CVI.

> *Treatment:* All Class B Interests shall be cancelled and Holders of Class B Interests shall not receive or retain any Cash or other property under the Plan on account of the Class B Interests.

*Voting:* Class 15 is Impaired, and the Holders of Class B Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Class B Interests are not entitled to vote to accept or reject this Plan.

*Class 16 – Class A Interests in CVI*

Claims In Class: All Class A Interests.

*Treatment:* All Class A Interests in CVI shall be cancelled and Holders of Class A Interests shall not receive or retain any Cash or other property under the Plan on account of the Class A Interests.

*Voting:* Class 16 is Impaired, and the Holders of Class A Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Class A Interests are not entitled to vote to accept or reject this Plan.

**3.4** ***Intercompany Claims***. On the Effective Date, all net Intercompany Claims (taking into account any setoffs of Intercompany Claims) held by the Debtors between and among the Debtors or between one or more Debtors and any affiliate of one of the Debtors that is not itself a Debtor shall, at the election of Reorganized CVI, be either (a) Reinstated, (b) released, waived, and discharged, or (c) contributed to, or dividended to, the capital of the obligor.***Special Provision Regarding Unimpaired Classes of Claims***. Except as otherwise provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims in Unimpaired Classes, including all rights with respect to legal and equitable defenses to setoffs against or recoupments of Claims in Unimpaired Classes.

# ARTICLE IV

## ACCEPTANCE OF THIS PLAN

**4.1** ***Classes Entitled to Vote***. Classes 2, 3, 4, 7, and 8 are Impaired and entitled to vote to accept or reject this Plan. By operation of law, Classes 1, 5, 6, 9, and 11, which are Unimpaired Classes, are deemed to have accepted this Plan and, therefore, is not entitled to vote. By operation of law, Classes 10, 12, 13, 14, 15, and 16, which are Impaired Classes and do not receive any cash or other property under the Plan, are deemed to have rejected this Plan and are not entitled to vote.

**4.2** ***Acceptance by Impaired Classes***. An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code, (i) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

**4.3** ***Elimination of Classes***. To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b)

determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.4** *Cramdown*. To the extent necessary, except with respect to Classes 3 and 4, the Debtors shall request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify this Plan with the consent of Praesidian and LBN to the extent, if any, that confirmation pursuant to section 1129 (a) or (b) of the Bankruptcy Code requires modification.

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**5.1** *Continued Legal Existence and Revesting of Assets*. Except as otherwise provided in this Plan, each of the Debtors will continue to exist after the Effective Date as a separate legal entity, with all the powers of such an entity (whether a limited liability company, corporation, or other entity, as appropriate) under applicable law in the jurisdiction in which each applicable Debtor is organized, incorporated or otherwise formed and pursuant to such Debtor's articles of organization or formation, operating agreement and other organizational documents in effect as of the Effective Date (provided that such organizational documents shall be amended to prohibit the Reorganized Debtor from issuing non-voting equity securities, to the extent necessary to comply with section 1123(a) of the Bankruptcy Code), without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. In accordance with Article 9.2 hereof, and except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising each Estate (including Retained Actions) shall revest in the applicable Reorganized Debtor.

**5.2** *Sources of Cash for Distribution*. All Cash necessary for the Reorganized Debtors to make payments required by this Plan shall be obtained from (i) existing Cash balances, (ii) the operations of the Debtors or Reorganized Debtors, and (iii) the Exit Facility. The terms and conditions of the Exit Facility are set forth in a loan agreement separately filed with the Bankruptcy Court and generally described in the Disclosure Statement. The Confirmation Order shall constitute an Order approving the terms and conditions of the Exit Facility.

**5.3** *Amended CVI Operating Agreement*. On the Effective Date, the Amended CVI Operating Agreement will become effective.

**5.4** *Section 1145 Exemption*. Pursuant to section 1145 of the Bankruptcy Code, the issuance and allocation of membership units in Reorganized CVI shall be exempt from registration under the Securities Act and any state or local law requiring registration for offer or sale of a security.

**5.5** *Corporate Action*. Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Debtor or any corporate action to be taken by, or required of, any Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective

Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors.

**5.6** ***Preservation of Causes of Action***.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions.  After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtors or any successors, in the exercise of their sole discretion, may pursue such Retained Actions.  The failure of the Debtors to specifically list any claim, right of action, suit, proceeding, or other Retained Action in this Plan or the Disclosure Statement does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings, and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the confirmation or consummation of this Plan.

**5.7** ***Effectuating Documents; Further Transactions***.  Each of the Debtors and Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record all contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

**5.8** ***Exemption From Certain Transfer Taxes and Recording Fees***.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.9** ***Further Authorization***.  The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**5.10** ***Dissolution of Creditors' Committee***.  The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  On the Effective Date, the Creditors' Committee shall be dissolved and the Creditors' Committee's members shall be deemed released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys,

accountants, professionals, and other agents shall terminate, except with respect to (i) all Professional Fee Claims, and (ii) any appeals of the Confirmation Order.

**5.11** ***Officers and Directors of Reorganized Debtors***.  On the Effective Date: (a) the officers for each of the Reorganized Debtors shall be: (i) Charles Grieve, Chief Executive Officer, and (ii) David Barton, President; (b) the managers of Reorganized CVI shall be David Barton, Jason Drattell, Charles Grieve, and JDH, (c) the manager of the Reorganized Subsidiary Debtors other than DB 85 Gym Corp. shall be Charles Grieve, and (d) the directors of Reorganized DB 85 Gym Corp. shall be David Barton, Jason Drattell, Charles Grieve, and JDH.  On the Effective Date, such officers, directors or managers, as applicable, of the Reorganized Debtors will be appointed automatically without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors, and their compensation for such services shall be in whole or in part as agreed to in the Amended CVI Operating Agreement. Without limitation, the compensation of Charles Grieve shall be pursuant to the terms of the Meridian Management Agreement, which will be assumed under the Plan as amended by the Amended CVI Operating Agreement.

# ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1** ***Allowed Claims and Interests***.  Notwithstanding any provision herein to the contrary, the Debtors or the Reorganized Debtors shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive only a distribution on account thereof when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

**6.2** ***Distributions for Claims Allowed as of the Effective Date***.  Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions to Holders of Allowed Claims will be made by mail as follows:

(a)     If the Holder filed a proof of claim, distributions will be sent to the address, if any, set forth on the proof of claim;

(b)     If the Holder, after filing a proof of claim, delivered or delivers to the Debtors a written notice of address change, distributions will be sent to the address set forth in the written notice and not the address set forth on the proof of claim;

(c)     If no proof of claim was filed or if the filed proof of claim does not set forth a legible and complete address and if the Debtors have not received a written notice of address change, distributions will be sent to the address set forth in the Debtors' schedules of assets and liabilities (the "Schedules") or

(d)      If no proof of claim was filed or if the proof of claim does not set forth a legible, complete address; the Debtors have not received a written notice of address change; and the Schedules do not set forth a complete address, then the distribution will be deemed to be an "Undeliverable Distribution" as defined below.

6.3      *Undeliverable Distributions*.  If a distribution is made and returned to the Reorganized Debtors marked as undeliverable for any reason, the distribution shall be deemed an "Undeliverable Distribution."  If a distribution to a Holder is returned to the Reorganized Debtors as an Undeliverable Distribution or is deemed to be an Undeliverable Distribution, the Reorganized Debtors shall make no further distribution to the Holder  unless and until the Reorganized Debtors are timely notified by such Holder, in writing, of the Holder's current address.  Any Holder who is otherwise entitled to an Undeliverable Distribution and who does not, within 60 days after the attempted delivery thereof (the "60-Day Period"), provide the Reorganized Debtors with written notice asserting its claim in that Undeliverable Distribution and setting forth a current, deliverable address, will be deemed to waive any claim to or interest in that Undeliverable Distribution and will be forever barred from receiving that Undeliverable Distribution from the Reorganized Debtors.  Any Undeliverable Distributions that are not claimed prior to the expiration of the 60-Day Period shall revert back to the Reorganized Debtors free and clear of all claims of the Holder and all other Holders of Allowed Claims.  The Reorganized Debtors shall not have any obligation to attempt to locate any Holder whose distribution is undeliverable.

6.4      *Interest and Penalties on Claims*.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, including Priority Tax Claims and Non-Tax Priority Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

6.5      *Means of Cash Payment*.  Payments of Cash made pursuant to this Plan shall be made, at the option and in the sole discretion of the applicable Reorganized Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Reorganized Debtor.  Cash payments to foreign creditors may be made, at the option of the applicable Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

6.6      *Withholding and Reporting Requirements*.  In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

6.7      *Setoffs*.  The Reorganized Debtors may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by

the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder. The Debtors or the Reorganized Debtors shall provide notice of any proposed setoff to the Holder of such Claim at least five (5) days prior to effectuating such setoff.

**6.8**     *Procedures for Resolving Disputed, Contingent, and Unliquidated Claims*.

(a)     *Authority and Deadline*. The Reorganized Debtors shall have the sole right to file objections to all Disputed Claims. Any objections to Disputed Claims shall be served and filed in the Bankruptcy Court on or before sixty (60) days after the Effective Date; *provided, however,* with respect to any Unimpaired Claim, in the event such Claim is not an Allowed Claim as of the Effective Date, the Holder of such Claim or the Reorganized Debtors may commence at any time an action or proceeding to determine the amount and validity of such Claim in the Bankruptcy Court or any venue in which such Claim could have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

(b)     *Creation of Reserves for Disputed Claim*. The Reorganized Debtors shall (i) establish and maintain a reserve for Disputed Claims, (ii) establish and maintain a reserve for unclaimed distributions, and (iii) establish any other reserves or accounts it deems necessary or appropriate. All cash held in the reserves shall be invested only in investments permitted under the Bankruptcy Code and maintained in accounts held at authorized bank depositories for the Southern District of New York.

(c)     *Estimation of Claims*. The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection and make distributions under the Plan with respect to other Allowed Claims in the same class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Except as provided herein and in the Agreement, Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(d)     *Distributions Relating to Disputed Claims*. At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall distribute to the Holder of such Claim such Cash as the Holder is entitled to under the Plan, which distribution shall occur as soon as practicable after the date that the order or judgment allowing any Disputed Claim becomes a Final Order. To the extent that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed.

(e)     *Disallowed Claims*.   All Claims held by persons or entities against whom or which any of the Debtors or Reorganized Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and shall continue to be Disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

# ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1**     *Assumption/Rejection of Executory Contracts and Unexpired Leases*.  Each Executory Contract and Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

(a)     has been previously rejected by the Debtors by Final Order of the Bankruptcy Court;

(b)     has been rejected by the Debtors by order of the Bankruptcy Court in effect as of the Confirmation Date (which order may be the Confirmation Order); or

(c)     is the subject of a motion to reject filed by the Debtors under section 365 of the Bankruptcy Code pending as of the Confirmation Date.

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "***Assumed Contract***."  An Executory Contract that is rejected or subject to a motion to reject as described above shall be referred to as a "***Rejected Contract***."

Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (i) the Reorganized Debtors have properly provided for the cure of any defaults that might have existed consistent with the requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption (or rejection, as the case may be) is in the best interest of the Debtors and their Estates and that each Assumed Contract is assumed as of the Effective Date, and (iii) the requirements for assumption (or rejection, as the case may be) of any Executory Contract or Unexpired Lease to be assumed have been satisfied.  No provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtors based on the filing of the Chapter 11 Cases or the financial condition of the Debtors shall be enforceable.  All cure payments under any Assumed Contract will be made by the Reorganized Debtors on the Effective Date or as soon as practicable thereafter.  In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute.

Unless otherwise provided by an order of the Bankruptcy Court, any Claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed by Holders of such

Claims with the Bankruptcy Court and served on the parties entitled to notice under this Plan no later than sixty (60) days after the later of (1) the Effective Date and (2) the effective date of such rejection, subject to the Debtors' and Reorganized Debtors' right to object thereto.  In the event of such objection, the Debtors shall not be obligated to make any distribution in respect of such Claim until such dispute is resolved by Final Order of the Bankruptcy Court or the agreement of the parties.

7.2    ***Compensation and Benefit Programs.***  All of the Debtors' existing programs, plans, agreements, and arrangements relating to employee compensation and benefits (other than as set forth in any Rejected Contract), including all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date, as amended from time to time and to the extent and as in effect immediately prior to the Effective Date ("***Benefit Plans***") will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Article 7.1 of this Plan, and the Debtors' and Reorganized Debtors' obligations and rights under such programs, plans, agreements, and arrangements will survive confirmation of this Plan, subject to the terms and conditions of such Benefit Plans.

7.3    ***Employment Contracts.***  Any employment agreements designated for rejection in writing by the Debtors and filed with the Bankruptcy Court prior to the Confirmation Date shall be deemed rejected as of the Effective Date.  Any Claims arising from the rejection of any employment agreements shall be governed by the deadlines set forth in Article 7.1.  Any such Claims will be classified as Class 8 General Unsecured Claims and will be capped in accordance with section 502(b)(7) of the Bankruptcy Code.

# ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THIS PLAN

8.1    ***Condition To Entry of the Confirmation Order***.  The following are conditions precedent to the Confirmation, each of which must be satisfied, or waived in writing, by the Debtors, LBN, and Praesidian in accordance with the terms hereof:

(a)    The Plan and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Debtors, Praesidian, and LBN.

(b)    The proposed Confirmation Order shall be in form and substance acceptable to the Debtors, LBN, and Praesidian.

8.2    ***Conditions To Effective Date***.  The Debtors shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtors, LBN, and Praesidian in accordance with the terms hereof:

(a)     The Confirmation Order, in form and substance satisfactory to the Debtors, LBN, and Praesidian, shall be in full force and effect and not subject to any stay and shall, among other things, provide that the Debtors and Reorganized Debtors are authorized without further board or shareholder approval or consent to take all actions necessary to enter into all agreements or documents created in connection with this Plan.  Without limiting the foregoing, the chairman of the board of directors, president, chief executive officer, chief financial officer or any other appropriate officer of the Debtors shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

(b)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(c)     All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

(d)     The Debtors shall have sufficient Cash, whether on hand or from funds advanced under the Exit Facility to make all required payments to be made on the Effective Date.

(e)     The Effective Date shall have occurred on or prior to October 31, 2011.

**8.3     *Waiver Of Condition*.**  The Debtors, LBN, and Praesidian may jointly waive, in whole or in part, the conditions to the occurrence of the Effective Date, without any notice to parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date shall preclude the occurrence of the Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Debtors, LBN, and Praesidian.  The waiver of a condition to the occurrence of the Effective Date shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

# ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

**9.1     *Binding Effect*.**  This Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all current and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors.

**9.2     *Revesting of Assets*.**  Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions) shall revest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security holders except as otherwise set forth in the Plan.  As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**9.3** ***Releases by the Debtors, their Estates and the Reorganized Debtors.*** As of the Effective Date, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious implementation of the restructuring and reorganization contemplated by this Plan, the adequacy of which is hereby confirmed, the Debtors, in their individual capacities and as debtors in possession, their Estates, and the Reorganized Debtors shall be deemed forever to release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against the Released Parties (other than the rights under this Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder or contemplated hereby and thereby, and any claims based thereon), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereunder arising, in law, equity, or otherwise.

**9.4** ***Discharge of the Debtors***.

(a)     Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to this Plan on account of such Claims, upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the holder of a Claim based upon such debt accepted this Plan; *provided, however*, the Debtors' obligations to provide adequate protection to LBN, Praesidian and BofA pursuant to paragraph 14 of the DIP/Cash Collateral Order and to reimburse and pay the legal fees and expenses of LBN, Praesidian and BofA pursuant to paragraphs 2 and 14 of the DIP/Cash Collateral Order and sections 2(e), 6(g), 7(b)(v) and 12(j) of the credit agreement approved by such order, to the extent such fees and expenses have not been previously paid or are paid on the Effective Date, shall not be discharged or released.

(b)     As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further Claims, debts, rights, causes of action, claims for relief, or liabilities relating to the Debtors or any Interest in the Debtors  based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, and the termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or a terminated Interest.

**9.5**    *Injunction*

(a)    ***General.***  **Except as provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released, terminated, exculpated, or discharged under this Article IX, along with their respective current and former employees, agents, officers, directors, managers, principals, affiliates, shareholders, and members, are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors and the Exculpated Parties, and their respective agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns or any of their respective property on account of any such released, terminated or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or Interest:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.**

**9.6**    *Exculpation and Limitation of Liability*.

(a)    None of the Exculpated Parties shall have or incur any liability to any Person or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for acts or omissions that are the result of fraud, gross negligence, criminal conduct, or willful misconduct, including the willful misappropriation of confidential information; *provided*, *however*, that the foregoing exculpation and limitation of liability shall not apply to and shall not operate to waive, release, or exculpate any Claims or causes of action arising from or related to the rights and obligations under this Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder or contemplated hereby and thereby.  Without limiting the generality of the foregoing, the Debtors, the Reorganized Debtors, LBN, Praesidian, JDH, the Creditors' Committee, and any of such parties' directors, managers, officers, or members, shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

(b)    Notwithstanding any other provision of this Plan, no Person, no Person's agents, directors, managers, officers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members and no Person's successors or assigns shall have any right of action against any of the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan,

the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for acts or omissions that are the result of fraud or willful misconduct, including the willful misappropriation of confidential information.

(c)     Notwithstanding any other provision herein, nothing in this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Exculpated Parties, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Exculpated Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority, against the Exculpated Parties referred to herein.

(d)     Notwithstanding any other provision herein, nothing in this Plan shall limit the liability of the Professionals of the Debtors or the Reorganized Debtors to their respective clients, including pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

**9.7     *Term of Bankruptcy Injunction or Stays*.**  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**9.8     *Post-Effective Date Retention of Professionals*.**  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Reorganized Debtors may employ and pay professionals in the ordinary course of business.

**9.9     *Effect of Release, Discharge and Injunction on Unimpaired Claims*.**  Nothing in this Plan, including the release, discharge, injunction and exculpatory provisions set forth in this Article IX, shall prevent any Holder of an Unimpaired Claim from pursuing (i) the Allowance of such Unimpaired Claim, or (ii) payment of such Unimpaired Claim from the Reorganized Debtors.

# ARTICLE X

## RETENTION OF JURISDICTION

**10.1     *Retention of Jurisdiction*.**  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease with respect to which any Debtor or Reorganized Debtor may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b) decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving the Debtors that may be pending on the Effective Date;

(c) decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving objections to Claims filed after the Effective Date;

(d) enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(e) resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from, or obligations incurred in connection with, this Plan or such documents;

(f) modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency, in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(g) hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b) and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses of the Reorganized Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(i) adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(j) recover all assets of the Debtors and property of the Estates, wherever located;

(k)     hear and determine causes of action by or on behalf of the Debtors or the Reorganized Debtors;

(l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason, or in any respect, modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(m)     hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     determine any other matters that may arise in connection with, or relate to, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order (other than a dispute arising after the Effective Date under, or directly with respect to, the Transaction Documents, which such disputes shall be adjudicated in accordance with the terms of the Transaction Documents);

(o)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(p)     hear and determine such other matters related hereto that are not inconsistent with the Bankruptcy Code or title 28 of the United States Code; and

(q)     enter an order closing the Chapter 11 Cases.

**10.2     *Failure of Bankruptcy Court to Exercise Jurisdiction*.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set for in Article 10.1 of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

# ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.1     *Effectuating Documents and Further Transactions*.**  Each of the Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan.

**11.2     *Corporate Action*.**  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, members or directors of one or more of the Debtors or the Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation or other applicable law of the states in which the Debtors or the Reorganized Debtors are organized without any requirement of further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

**11.3    *Indemnification Of Officers, Directors And Employees*.**  All Claims arising on or after the Commencement Date relating to or arising from the obligation of a Debtor to exculpate, indemnify or advance any expense to any officer, director, manager, employee or agent, shall survive confirmation of the Plan and become the obligations of the Reorganized Debtor.

**11.4    *Payment Of Statutory Fees*.**  All U.S. Trustee Fees due and payable as of the Effective Date, plus applicable interest, if any, shall be paid by the Debtors in full on the Effective Date.  The Reorganized Debtors shall be responsible for timely payment of all U.S. Trustee Fees, plus applicable interest, if any, incurred after the Effective Date.

**11.5    *Post-Confirmation Status Report*.**  Subject to any requirements set forth in the Postconfirmation Order and section 1106(a)(7) of the Bankruptcy Code, the Reorganized Debtors shall file, within 45 days after the date of the Postconfirmation Order, a status report detailing the actions taken by the Debtors and the Reorganized Debtors and the progress made toward the consummation of this Plan.  Reports shall be filed thereafter every January 15, April 15, July 15, and October 15 until a final decree has been entered or until conversion or dismissal, whichever is earlier.

**11.6    *Amendment Or Modification Of This Plan*.**  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code and subject further to the consent of Praesidian and LBN, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan as to any particular Debtor and seek to confirm and consummate the Plan with respect to the other Debtors; *provided, however*, that, in the event a material modification to the Plan is proposed after the Effective Date, the Reorganized Debtors shall provide notice and an opportunity to object to all interested parties.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**11.7    *Additional Debtors*.**  The Debtors reserve the right to commence Chapter 11 Case(s) on behalf of Additional Debtor(s) through the Confirmation Date and to seek the joint administration of the cases of such Additional Debtor(s) with the Debtors' Chapter 11 Cases upon notice and opportunity to object.  Upon entry of an order jointly administering such Additional Debtor's chapter 11 case with the Chapter 11 Cases, such Additional Debtor shall automatically become a party to this Plan.  Each holder of a Claim that accepts distributions pursuant to this Plan is conclusively deemed to have agreed to the inclusion of any Additional Debtors to all of the provisions set forth in this Plan.

**11.8    *Severability of Plan Provisions*.**  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtors, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected,

impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.9** *Successors and Assigns*. This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including the Reorganized Debtors. The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**11.10** *Revocation, Withdrawal, or Non-Consummation.* The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (B) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (C) constitute an admission of any sort by the Debtors or any other Person.

**11.11** *Notice*. All notices, requests, and demands to or upon the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by either hardcopy or electronic mail, addressed as follows:

> If to the Reorganized Debtors, to:
>
> Club Ventures Investments LLC
> Attention:  Charles Grieve
> 50 West 23rd Street, 5th Floor
> New York, New York  10010
> Email: chuck@meridiansportsclubs.com
> Telephone: (415) 485-1001
>
> with a copy to:

Peitzman, Weg & Kempinsky LLP
Attn:  David B. Shemano, Esq.
2029 Century Park East, Suite 3100
Los Angeles, California  90064
Email: dshemano@pwkllp.com
Telephone: (310) 552-3100

If to LBN, to:

Moses & Singer LLP
Attn: Howard Herman, Esq.
405 Lexington Avenue
New York  New York  10174-1299
Email: hherman@mosessinger.com
Telephone: (212) 554-7847

If to Praesidian, to:

Praesidian Capital
Attn:  Jason Drattell
419 Park Avenue South
New York,  New York  10016
jdrattell@praesidian.com
Telephone: (212) 520-2620

with a copy to:

Morrison Cohen LLP
Attn:  Stephen Budow, Esq.
909 Third Avenue
New York,  New York  10022
sbudow@morrisoncohen.com
Telephone: (212) 735-8668

**11.12**  *Governing Law*.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law of such jurisdiction.

**11.13**  *Tax Reporting and Compliance*.  The Reorganized Debtors are hereby authorized, on behalf of each of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**11.14   *Conflicts*.**  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.


Dated:  September 20, 2011


                                        CLUB VENTURES INVESTMENTS LLC
                                        (for itself and on behalf of the other Debtors)


                                        By: _____/s/ Charles Grieve_____
                                              Name: Charles Grieve
                                              Title: Chairman