**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    NOT FOR PUBLICATION
:
In re:    :    Chapter 11
:
CLUB VENTURES INVESTMENT LLC, et al., :    Case No. 11-10891 ALG
:
Debtors.    :    Jointly administered
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF DECISION AND ORDER

A P P E A R A N C E S:

Jonathan L. Flaxer, Esq.
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, NY 10022
(212) 907-7300

David B. Shemano, Esq.
PEITZMAN WEG LLP
2029 Century Park East
Suite 3100
Los Angeles, CA 90067
*Counsel for Debtors*

MARK BERKOWITZ
*Creditor, Pro Se*

**ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE**

Before the Court are (i) the motion of reorganized debtor Club Ventures Investment LLC

(the "Debtor") for an order granting summary judgment determining that Mark Berkowitz – the

1

former chief financial officer of the Debtor (or of a company of the same name) – is a creditor and estimating the amount of Berkowitz's claim, and (ii) Berkowitz's objection and cross-motion seeking an order granting him summary judgment finding that he holds a claim against an entity other than the Debtor. For the reasons stated below, the Debtor's motion is granted, Berkowitz's motion is denied, and Berkowitz's claim is estimated at $184,963.06 for purposes of distribution pursuant to section 502(c) of the Bankruptcy Code.

## Background

The following facts are taken from the parties' papers and the docket in this case. Although the Debtor and Berkowitz hotly contest many facts and issues, the record is more than adequate to make the findings necessary to support this decision. The procedural history of this adversary proceeding is more fully set forth in a prior decision, *In re Club Ventures Inv. LLC*, No. 11-10891 ALG, Dkt. No. 230, 2012 WL 1098565 (Bankr. S.D.N.Y. March 30, 2012).

In brief, the Debtor was the parent company that owned and operated a chain of high-end fitness centers located in major metropolitan centers throughout the country. Together with certain of its affiliates, it filed for chapter 11 relief on March 2, 2011. Berkowitz was the Debtors' chief financial officer from about November 2005 to June 2007, when his employment terminated. (*See* Barton Decl. 9/13/11, Dkt. 162.) On or about November 30, 2007, he filed an amended complaint in the Supreme Court of the State of New York (the "State Court Action"), claiming breach of contract, retaliatory denial of compensation, tortious interference with contract, failure to pay compensation in violation of Delaware labor law, breach of fiduciary duty, and indemnification of all defense expenses. The State Court Action was filed against three named defendants: "Club Ventures Investment LLC" (the "CVI Defendant"), which is the

2

name of the Debtor, and two of its members, David Barton, the founder and CEO, and John Howard, the Debtor's majority owner. The State Court Action is still pending; it was stayed against the Debtor by reason of the chapter 11 filing.

After the Debtor filed for bankruptcy, Berkowitz filed a proof of claim for "wages, services, litigation," designated as Claim No. 64 ("the Berkowitz Claim"). The Berkowitz Claim asserts an unsecured claim of $10,149,531, of which $11,725 is allegedly based on priority wage and benefit claims under 11 U.S.C. § 507(a)(4). The largest portions of the Berkowitz Claim are $3,500,000 for a whistleblower retaliation claim, $3,500,000 for tortious interference with Berkowitz's employment agreement (the "Employment Agreement"), $2,900,000 in membership interests allegedly not provided to Berkowitz, $520,000 for an "equity financing bonus," and $226,149.19 in EBITDA bonuses allegedly owed to Berkowitz under the Employment Agreement for the years 2005, 2006, and 2007.[1] The claim also includes amounts Berkowitz asserts are owed under his Employment Agreement for base compensation, accrued unused vacation time, unreimbursed expenses, and consulting fees. (*See* Berkowitz Decl. 2/24/12, Dkt. No. 223, at Exh. 2.)

Berkowitz filed his proof of claim personally and gave his address as c/o the law firm representing him in the State Court Action. (*See* Flaxer Decl. 1/24/2012, Dkt. No. 220, at Exh. B.) The firm representing him in the State Court appeared for Berkowitz on a motion for relief

---

[1] This amount also includes base compensation allegedly owing for the year 2005. The complaint in the State Court Action does not separately break out the 2005 base compensation from the 2005 bonus. (*See* Berkowitz Decl. 2/24/12, Dkt. No. 223, at Exh. 2.) While Berkowitz's cross-motion for summary judgment provides a different itemization of the specific amounts, the Court relies on the numbers in the State Court complaint as the Berkowitz Proof of Claim incorporates the claims more specifically spelled out in the State Court Action.

3

from the automatic stay, which was denied, but has not appeared since then, and Berkowitz has – despite this Court's frequent advice to retain counsel – purported to act *pro se*.

After filing the Berkowitz Claim, Berkowitz requested an order permitting him to withdraw his claim against the Debtor and to prosecute his claims in the State Court Action against the CVI Defendant, which has the same name as the Debtor but which Berkowitz asserts is "a different legal person than . . . the same-named Club Ventures Investments LLC that is the Debtor in this bankruptcy proceeding." (Opp. to Debtor's Objection to Claim No. 64 ¶ 4, Dkt. No. 212.) The background to this dispute is based on the following undisputed facts. The Debtor was formed in Delaware pursuant to a limited liability company agreement (the "Original LLC Agreement") between Howard and Barton. (*See* Shemano Decl. 6/26/12, Dkt. No. 241, at Exh. 3.A.) Howard and Barton – and later, various other investors – purported to amend the Original LLC Agreement pursuant to a series of eight amended LLC agreements and a final amended and restated LLC agreement, dated March 24, 2009. (*See* Shemano Decl. 6/26/12, Dkt. No. 241, at Exh. 3.) The second amendment to the Original LLC Agreement (the "Second Amendment"), dated November 18, 2005, added Berkowitz as a member and provided him with 2.9 Class B membership units in the Debtor. Berkowitz argues that the amendments after the Second Amendment were improper, principally because he did not agree to them, and that they created a new entity, "Imposter CVI," with the same name as the prior LLC entity. While the upshot, according to Berkowitz, is that "Real CVI" is a different entity from "Imposter CVI" (the Debtor in these proceedings), Berkowitz admits that the Original LLC Agreement was validly amended by Barton and Howard to admit him as a member. He insists that all subsequent amendments were invalid as he allegedly had rights under the Second Amendment – including

4

the ability to prevent any issuance of new equity and certain governance rights – that were not provided to him in the later amendments. His basic claim is that an "Imposter CVI" filed for relief under chapter 11, and that "Real CVI" is still in existence and can be sued.

In response, the Debtor asserts that there is and has been only one entity and that, whether or not valid, the amendments only served to amend the operating agreements governing the Debtor and did not create a new or "Imposter CVI" entity, and that even an invalid amendment does not result in the creation of a new entity under applicable Delaware law. In any event, the Debtor contends, section 11.12 of the Original LLC Agreement provided that it could be amended "pursuant to a written agreement executed by Members holding at last 80% of the Membership Units." (*See* Shemano Decl. 6/26/12, Dkt. No. 241, at Exh. 3.A.) Although the definition of Membership Units was expanded from the 100 Class A membership units held by Barton and Howard to include the Class B membership units newly issued to Berkowitz (*see id.* at Exh. 3.C), that provision was not changed by the Second Amendment. According to the Debtor, there is no basis to Berkowitz's contention that the amendments were invalid because he does not contend that he ever held more than 20% of the membership units in "Real CVI" or that the signatories to those amendments did not hold all of the other membership units in the Debtor. Instead, Berkowitz only argues that the amendments were invalid because his consent was – or should have been – required for any amendment.

In a prior decision entered on March 30, 2012, this Court decided that (i) Berkowitz's assertion that he held a claim against a non-debtor entity rather than the Debtor did not constitute a judicial admission that he held no claim against the Debtor, but should be construed as an attempt to plead in the alternative, and (ii) Berkowitz was not judicially estopped from asserting

5

a claim against the Debtor because there was no evidence that the State Court had adopted Berkowitz's assertion that he held a claim against a non-debtor entity.  It also found at that time that it would be efficient to allow the State Court to determine whether "Real CVI" and "Imposter CVI" were separate entities, with the proviso that the Debtor could seek estimation of the Berkowitz Claim if the adjudication of the issue in the State Court unduly delayed the administration and closing of the Debtor's bankruptcy case. *See Club Ventures Inv.,* 2012 WL 1098565 at *3.  The Debtors have now requested the Court to estimate Berkowitz's Claim, and, as further discussed below, referral of this issue to the State Court would unreasonably delay a distribution to creditors in this case.  Equally important, both parties have asked the Court to rule on the issue of whether the Debtor is, in Berkowitz's words, Imposter CVI.  (*See* Debtors' Motion for Summary Adjudication and Estimation, Dkt. No. 240, at pages 20-21; Berkowitz's Cross-Motion for Summary Adjudication and Opposing Estimation, Dkt. No. 274, at pages 9, 21.)  The Court finds that the identity issue can readily be determined in the Debtor's favor on this motion.

That brings us to the question of estimation and the amount of the Berkowitz Claim. Berkowitz asserts he is owed the full amount of the Claim, while the Debtor moves to estimate the Berkowitz Claim for plan distribution purposes at $184,963.06 without considering what the Debtor calls an unsupported amount for attorneys' fees and expenses ($63,304.28).  The Debtor argues (i) that the $2,900,000 claim for the allegedly unissued membership units should be subordinated pursuant to Bankruptcy Code section 510(b); (ii) that the $3,500,000 tortious interference with employment agreement claim is unsupported and duplicative of other portions of the Berkowitz Claim; (iii)  that the $3,500,000 whistleblower retaliation claim is also

6

duplicative and unsupported; (iv) that the $520,000 equity financing bonus claim has been withdrawn (*see* Dkt. No. 274); (v) that the 2006 and 2007 bonuses are not owed because the Debtor allegedly did not have positive EBITDA for those years;[2] and (vi) the legal fees are excessive and unsupported.

## Discussion

This decision will first address whether "Real CVI" and "Imposter CVI" are separate legal entities, and then whether and in what amount the Berkowitz Claim should be estimated.

### A. "Real CVI" Versus "Imposter CVI"

Berkowitz charges that all amendments to the Original LLC Agreement after the Second Amendment (which admitted him) were invalid and that the entity that continued in amended form was an "imposter." As Berkowitz correctly notes, the question whether a contract can be amended is determined by the intent of the parties at the time of entry into the original contract. However, Berkowitz fails to acknowledge that the intent of the parties is determined by reference to the written language of the contract. *See Citadel Holding Co. v. Roven*, 603 A.2d 818, 822 (Del. 1992). Applying these principles in this case, the Original LLC Agreement, the First Amendment, and the Second Amendment are not ambiguous on this issue, do not express an intention to prohibit further modifications to the Original LLC Agreement, and indeed expressly allowed for amendments. Section 11.12 of the Original LLC Agreement provided holders of 80% of the membership units with the right to amend that agreement, and that section was unaffected by the First and Second Amendments. Since it is undisputed that after the Second Amendment Howard and Barton held 100 membership units, while Berkowitz held – at most –

---

[2] EBITDA means earnings before interest, taxes, depreciation, and amortization.

7

2.9 membership units, 100 membership units constituted well over 80% of the then outstanding membership units, and Howard and Barton had the right to amend the Operating LLC Agreement without the consent of Berkowitz.[3]

In any event, even if the subsequent amendments were improper, there is no evidence that a new entity was created. At best, Berkowitz could potentially claim that the amendments are unenforceable against him. *See Airgas, Inc. v. Air Products and Chemicals, Inc.*, 8 A.3d 1182, 1194-95 (Del. 2010) (holding an amended corporate bylaw to be invalid where, among other things, it was amended without the affirmative vote of holders of at least 67% of the voting power of all shares in violation of the corporate charter).

Berkowitz argues that the later amendments constituted novations of – or separate agreements to – the Original LLC Agreement, but there is absolutely no evidence that the parties intended a novation. Under Delaware law, "[a] new contract relating to the subject matter of the former agreement does not destroy the obligation of the former agreement, except as it is inconsistent therewith, unless it is shown that the parties intended the new contract to supersede the old contract entirely." *Lee Builders, Inc. v. Wells*, 92 A.2d 710, 715 (Del. Ch. 1952)

---

[3] Berkowitz cites *Abbey v. Fortune Drive Assocs.*, 2010 WL 1553616, 2010 Cal. App. Unpub. LEXIS 2860 (Cal.App. 1st Dist., Apr. 10, 2010), for the general proposition that the Operating LLC Agreement could never be amended without Berkowitz's consent. *Abbey* cannot be interpreted so broadly. In *Abbey*, the LLC agreement was amended to terminate a member and require that member to arbitrate any claims relating to the termination without his consent. The *Abbey* court found that the arbitration amendment was not valid because the disfavored member could not have anticipated the adoption of such an amendment by the majority. *Id.* at *7. Notably, *Abbey* noted that if the arbitration amendment had been adopted outside the context of the termination provision and had applied to all disputes, there would have been no obvious basis for finding it outside the contemplation of the parties. *Id.* at 6. Further, the court noted that the terminated member's consent to the termination was not necessary because the LLC agreement provided for amendment by a majority of the members. *Id.* at 2. Here, Berkowitz points out no specific provision of any of the amendments to the Original LLC Agreement that would have been outside of the contemplation of the parties, and the record is devoid of any evidence that the amendments altered the Original LLC Agreement in an unanticipated manner.

8

(citations omitted); *see also In re VeraSun Energy Corp.*, 467 B.R. 757, 764 (Bankr. D. Del. 2012) ("writings connected by internal references to each other and involving the same subject matter constitute a single contract for the entire transaction.") (citation omitted). "A novation . . . occurs when 'the parties intend the new contract to replace all of the provisions of the earlier contract.' RESTATEMENT (SECOND) OF CONTRACTS § 279 at 375 (1979). The burden is on the party claiming the novation." *China Resource Prods. v. Fayda Int'l*, 747 F. Supp. 1101, 1106 (D. Del. 1990) (citations omitted). Here, the amendments state that they incorporate the Original LLC Agreement and merely list those terms of the Original LLC Agreement that were changed – adding new terms to or revising the existing terms of the Original LLC Agreement. The amendments did not constitute a novation or create a different CVI. Real CVI and Imposter CVI are one and the same entity, and that entity filed under chapter 11 and received a discharge in bankruptcy. Berkowitz has a claim against that one entity, and he cannot proceed in State Court against this entity on the false premise that he is proceeding against a different LLC.

*B. Estimation of the Berkowitz Claim*

As "Real CVI" and "Imposter CVI" are the same entity and Berkowitz's claim is against the Debtor, the Court must address whether the Berkowitz Claim should be estimated pursuant to Bankruptcy Code section 502(c). Section 502(c) provides: "[t]here shall be estimated for the purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case. . . ." Estimation pursuant to Bankruptcy Code section 502(c) is mandatory where adjudication of the claim would unduly delay the administration of the bankruptcy case. *See In re Thompson McKinnon Securities, Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992); *In re Nova Real Estate*

9

*Inv. Trust*, 22 B.R. 62, 65 (Bankr. E.D. Va. 1982). Here, the plan was confirmed on September 23, 2011. All unsecured claims other than Berkowitz's have been resolved and the distribution of $143,601.43 to unsecured creditors is in escrow, waiting to be paid.[4] The only impediment to distribution is that the Berkowitz claim of $10,149,531 exceeds the claims of all of the other general unsecured creditors combined (approximately $2,610,900) by a factor of almost four and effectively precludes reserving for the Berkowitz Claim, as around 80% of the amount in escrow would have to be reserved. (*See* Reorganized Debtor's Fourth Post-Confirmation Status Report, Dkt. No. 273.) There is no prospect of any decision by the State Court; the State Court recently issued a scheduling order providing that the "[t]rial date shall be adjourned in the event that the bankruptcy court has not issue[d] a determination on the identity of Club Ventures." (*See* December 3, 2012 Letter of Jonathan L. Flaxer, Dkt. No. 284; December 4, 2012 Letter of Mark Berkowitz, Dkt. No. 285.) Under the circumstances, the Berkowitz Claim should be estimated. *See In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) ("This language [11 U.S.C. § 502(c)] is mandatory, not permissive, and creates in the Court an affirmative duty under proper circumstances to estimate any unliquidated claim. . . .").

A bankruptcy court has wide discretion in estimating a claim. As the court said in *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134 (3d Cir. 1982),

> In reviewing the method by which a bankruptcy court has ascertained the value of a claim under section 502(c)(1), an appellate court may only reverse if the bankruptcy court has abused its discretion. That standard of review is narrow. The appellate court must defer to the congressional intent to accord wide latitude to the decisions of the tribunal in question. Section 502(c)(1) of the Code embodies Congress' determination that the bankruptcy courts are better equipped

---

[4] Not including the Berkowitz Claim, the Debtor would expect to provide unsecured creditors with a 5.5% pro rata distribution.

10

> to evaluate the evidence supporting a particular claim within the context of a particular bankruptcy proceeding.

*Bittner*, 691 F.2d at 136 (footnotes omitted). *See also In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994) ("Bankruptcy courts have wide discretion in choosing the process for estimating a claim."). Based upon the entire record, the Court finds that a review of the voluminous evidentiary materials and the October 18, 2012 oral argument is sufficient, coupled with the Debtor's concessions, to liquidate the claim in a manner that is fair to Berkowitz and the other unsecured creditors. *See, e.g.*, *Windsor Plumbing Supply Co.*, 170 B.R. at 520 (deciding to estimate a claim by a review of the documents submitted by the parties). Notably, the parties have each represented to the Court that there is enough evidence in the record to grant their respective motions for summary judgment. While Berkowitz also asserts that this Court should hold an evidentiary hearing if the Court decides to proceed with estimation, "it may sometimes be inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay." *Id.*

The Debtor, in its motion for summary judgment, conceded that the following amounts should be allowed in full for estimation purposes: $34,453.60 for 2005 base compensation and EBITDA bonus, $29,388.77 for 2006 base compensation, $17,307.69 for accrued unused vacation time, $26,426 for unreimbursed expenses, and $77,387 for consulting fees, for a total amount of $184,693.06. Because there is no dispute regarding these amounts and the record reflects that Berkowitz worked for the Debtor as its chief financial officer, these amounts are

11

allowed as unsecured claims for estimation purposes.[5] This decision will address each of the remaining portions of the Berkowitz Claim in turn.

*i.     $2,900,000 Membership Units Claim*

Berkowitz asserts that he is owed $2,900,000 for membership units which the Debtor allegedly failed to issue to him. This claim does not need to be estimated as it should be subordinated pursuant to Bankruptcy Code section 510(b) and subordinated claims do not receive any distributions under the Debtor's confirmed plan. (*See* Debtor's Second Amended Joint Plan of Reorganization, Dkt. No. 171, providing that Berkowitz's claim relating to the membership units would be subordinated and receive no distributions under the plan.) Such a result is wholly in accordance with bankruptcy law. Bankruptcy Code section 510(b) provides: "For the purpose of distribution under this title, a claim . . . for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security. . . ." Berkowitz asserts that section 510(b) does not apply because the membership units are not "securities" and the parties to the Second Amendment allegedly did not understand the units to be securities. The units fall within the scope of Bankruptcy Code section 510(b) as Berkowitz – pursuant to the clear language of the Second Amendment – sought to take on the benefit and risk expectations of being an equity holder. *See In re Med Diversified, Inc.*, 461 F.3d 251, 256 (2d Cir. 2006); *see also In re CIT Group Inc.*, 479 Fed. Appx. 393 (2d Cir. 2012), *affirming* 460 B.R. 633 (Bankr. S.D.N.Y. 2011). According to the Second Amendment, which provided Berkowitz with his right

---

[5] Berkowitz cannot claim a priority for $11,725 in wages and benefits pursuant to section 507(a)(8) of the Bankruptcy Code. The priority only covers wages and benefits earned within 180 days of the petition date, and Berkowitz's employment ended long before that time.

to the units, the "membership units" "represent[ed] such Member's interest in the income, gains, losses, deductions and expenses of the [Debtor]. . . ." (*See* Shemano Decl. 6/26/12, Dkt. No. 241, at Exh. 3.C.) The Second Amendment and the incorporated Original LLC Agreement also provided that Berkowitz's membership units would be entitled – after certain conditions were met – to distributions of that portion of the Debtor's cash which was unnecessary to the operation of the Debtor's business. (*See* Shemano Decl. 6/26/12, Dkt. No. 241, at Exhs. 3.A, 3.C.) In other words, Berkowitz's membership units would have given him certain rights to share in the Debtor's profits, and he would have had the risk and reward expectations of an equity holder. *See Med Diversified*, 461 F.3d at 257; *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 830 (9th Cir. 2001) ("The creditor can only recoup her investment; the investor expects to participate in firm profits.").

Additionally, insofar as Berkowitz contends that his claim is for the Debtor's failure to issue the membership units rather than for the membership units themselves, section 510(b) extends to claims relating to a failure to issue equity interests. *Med Diversified*, 461 F.3d at 259.

### ii. 2006 and 2007 EBITDA Bonus Claims

The parties dispute whether Berkowitz is entitled to a bonus for 2006 and 2007 based on his assertion that the Debtor had positive EBITDA during 2006 and 2007. Berkowitz claims that positive EBITDA was reported for those years, and that the EBITDA figures were only revised downwards due to irregularities that were discovered after he resigned. The Debtor asserts that Berkowitz was the cause of the irregularities. Regardless of who caused the irregularities, Berkowitz does not deny that the EBITDA numbers were properly revised downwards, and he

13

provides no evidence that those revisions were inaccurate or inappropriate. Hence, the Court will estimate the amount of the 2006 and 2007 EBITDA bonus claims at $0.00.

### iii. $3,500,000 Whistleblower Retaliation Claim

This is a claim pursuant to sections 1702 to 1704 of the Delaware Labor Law. Berkowitz alleges that Barton and CVI discriminated against him on the basis of his Jewish faith and the State Court verified complaint alleges that Barton threatened not to pay Berkowitz the amounts owing to him under the terms of his employment in retaliation for reporting allegedly erroneous and wrongful financial conduct.

The Debtor first asserts that Berkowitz has no claim under the statute because he was not terminated. Under the Delaware Whistleblowers' Protection Act, however, the employee does not need to be discharged – it is sufficient that the employer discriminates against the employee for reporting a violation. Del. Code Ann. tit. 19, § 1703. The violation can be an act or omission that is materially inconsistent with, or a serious deviation from, a rule or regulation of the employer – or a law, rule, or regulation of Delaware or the United States – that serves to protect against fraud, deceit, or misappropriation of funds or assets under the control of the employer. Del. Code Ann. tit. 19, § 1702(6)(b).[6]

The Debtor also claims that there were no financial irregularities, but this contention is contradicted by the Debtor's own assertion that Berkowitz is not entitled to EBITDA bonuses for

---

[6] The Debtor argues that the claim should be subordinated as a penalty or fine – through an analogy to Bankruptcy Code section 726(a)(4), which provides that penalties and fines are accorded a lower priority than general unsecured claims in a chapter 7 case – but it is not clear that this claim constitutes such a penalty or fine. Section 726(a)(4) provides that penalties, fines, and forfeitures are subordinated only "to the extent that such fine, penalty, or forfeiture [is] not compensation for actual pecuniary loss. . . ." According to the State Court complaint, the damages for this claim are for the Debtor's failure to pay Berkowitz the amounts to which he was entitled under his employment agreement with the Debtor.

14

2006 and 2007 precisely because EBITDA had to be reported downwards due to "financial irregularities." The October 16, 2012 Declaration of David Barton – submitted by the Debtor – affirms that "it was discovered that [the Debtor's] financials for [2005 through 2007], prepared by Berkowitz, had material discrepancies that required the net income to be negatively restated by millions of dollars." (Barton Decl. 10/16/12, Dkt. No. 271-1.) While the Debtor argues that Berkowitz was responsible for any irregularities, and notes that Berkowitz signed the audited financial statements in his capacity as chief financial officer (*see* Barton Decl. 9/13/11, Dkt. No. 162), Berkowitz attributes the blame to other employees of the Debtor who did not report to him. (*See* Berkowitz Decl. 10/17/12, Dkt. No. 283.) The evidence before the Court consists of the competing declarations of Berkowitz and Barton, and this factual issue cannot be resolved on the papers.

In any event, it is also clear for the purposes of this estimation proceeding that this claim is duplicative of other portions of the Berkowitz Claim. The State Court Complaint asserts damages for the Debtor's refusal to pay Berkowitz the amounts to which he was allegedly entitled under his employment agreement with the Debtor. The Delaware Whistleblower Protection Act likewise provides that the damages for retaliation include "reinstatement of the employee, the payment of back wages, reinstatement of fringe benefits and seniority rights, expungement of records relating to the disciplinary action or discharge, [and/or] actual damages" along with the costs of litigation. Del. Code Ann. tit. 19, § 1704(d). In short, to the extent this claim relates to actual – rather than punitive – damages along with litigation costs, the claim is duplicative of the other portions of the Berkowitz Claim. Moreover, to the extent this claim relates to compensation that Berkowitz would have received if he had continued his employment

15

with the Debtor – and it is wholly unclear from the State Court complaint that such damages were sought – Berkowitz has failed to provide this Court with a copy of the letter agreement specifying the amount of his compensation or the length of his employment. Hence, the Court will estimate this claim at $0.00.

*iv.    Equity Financing Bonus Claim*

This claim is estimated at $0.00 as Berkowitz states in his cross-motion for summary judgment that the Berkowitz Claim "includes no claim for any such bonus." (Dkt. No. 274.)

*v.    $3,500,000 Tortious Interference With Contract Claim*

The State Court complaint seeks damages for "compensation and benefits owed to [Berkowitz]." (*See* Shemano Decl. 6/26/12, Dkt. No. 241, at Exh. 1.) In order to state a claim for tortious interference with contract under Delaware law, "[t]here must be (1) a contract, (2) about which [the breaching party] knew, and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987). Regardless of the merits of this claim, the damages sought relate to the Employment Agreement and appear to be duplicative of the claims for compensation. As such, the claim is estimated at $0.00.

*vi. Attorneys' Fees and Expenses Claim*

Berkowitz is claiming attorneys' fees and expenses that he incurred in the State Court Action of $63,304.28.[7] The State Court held in a September 18, 2009 decision that Berkowitz was entitled to indemnification under the Original LLC Agreement for the costs of defending

---

[7] Berkowitz's cross-motion for summary judgment states that he is owed $757,268 for legal fees and expenses incurred through March 2, 2011. (*See* Dkt. No. 274.) No substantiation of this amount has been provided in the record.

16

himself against the Debtor's counterclaims, but not for the costs of prosecuting his complaint. (Dkt. No. 279-21, Exh. 21.) However, the State Court did not determine whether Berkowitz's State Court attorneys had been hired on a contingency basis – and therefore whether any fees and expenses had actually been incurred – or the amount of any such fees and expenses. (*Id.*) Notably, at the time of the decision, the Debtor had dismissed all of its counterclaims against Berkowitz except for a $2,000 American Express charge in order to avoid liability for indemnification. (*Id.*) Berkowitz has not provided this Court with the retainer agreement – if any – between Berkowitz and his State Court attorneys or his attorneys' billing records. *See* Fed. R. Bankr. Proc. 3001(c)(1). As a consequence, it is impossible for the Court to determine whether the attorneys were hired on a contingency basis or if their fees and expenses relate to the counterclaims. If the attorneys were hired on a contingency basis, then the fees and expenses would never come due as a claim against the Debtor in State Court as Berkowitz's claims against the Debtor were discharged by the Debtor's confirmed plan. Even if the attorneys were not hired on a contingency basis, the fees could wholly relate to the prosecution of the complaint rather than the defense of the counterclaims. Hence, the Court will estimate the amount of Berkowitz's attorneys' fees and expenses at $0.00.

## Conclusion

Based on the foregoing, the Debtor's motion for summary judgment that the CVI Defendant and the Debtor are the same legal entity is granted. Berkowitz's cross-motion for summary judgment on this issue is denied. Berkowitz may not continue to proceed against the Debtor – also known as the CVI Defendant – in the State Court Action. The Berkowitz Claim in the bankruptcy case is estimated for distribution purposes pursuant to section 502(c) of the

Bankruptcy Code at $184,693.06. For the avoidance of doubt, however, this determination does not have any bearing on whether Berkowitz has any claims against Barton or Howard in the State Court Action or the amount thereof.

    IT IS SO ORDERED.


Dated:   New York, New York
           December 11, 2012

                                      */s/ Allan L. Gropper*
                                      UNITED STATES BANKRUPTCY JUDGE